(February 11, 1913.)

## WOODSON JEFFREYS, Petitioner, v. FRED L. HUSTON, State Auditor, Defendant.

[129 Pac. 1065.]

LEGISLATURE—APPROPRIATION OF FUNDS OF THE STATE—STATUTES—REPEAL—SUSPENSION.

1. Sec. 13, art. 7 of the constitution of the state limits the power of any officer created under the constitution and laws of the state in paying out of the state treasury money except upon appropriation made by law.

2. Sec. 11, chap. 72, Laws of 1911, p. 202, provides there shall be appointed by the governor on the recommendation of the adjutant general, an assistant adjutant general who shall have the rank of major. The adjutant general shall receive as a yearly compensation the sum of $2,000, payable in equal monthly instalments, and the assistant adjutant general shall receive as a yearly compensation the sum of $1,500, payable in equal monthly instalments; and sec. 101 of said act provides, to carry out the provisions of this act a continuous appropriation of $25,000 per annum is hereby made out of any money in the state treasury not otherwise appropriated, and the use or expenditure of the same sum hereby appropriated shall not be limited to any particular year.

3. Chap. 86, Laws of 1911, p. 319, is a general appropriation bill, and provides for the payment of the salaries and compensation of officers and employees of the state and the general expenses of state government, and in said chapter it is provided that the following sums of money or so much thereof as may be necessary, are hereby appropriated for the payment of the salaries and compensation of state officers and employees of the state of Idaho and the general expenses of state government and the maintenance of the several state institutions for the period commencing on the first Monday of January, 1911, and ending on the first Monday of January, 1913; and provides "for all expenses relating to the National Guard of Idaho and the Reserve Militia, including the salaries of officers and subordinates as per House Bill No. 156, $45,000."

4. Where an act of the legislature provides for all expenses relating to the National Guard of Idaho and the Idaho Reserve Militia, including the salaries of officers and subordinates, and makes a continuing appropriation of $25,000 per annum, and that such appropriation shall not be limited to any particular year, and a subsequent general appropriation act is passed by the same legis-

lature four days thereafter, and in said general appropriation bill it was provided for all expenses relating to the National Guard of Idaho and the Idaho Reserve Militia, including the salaries of officers and subordinates, as per House Bill No. 156, $45,000 (House Bill No. 156 was the previous act appropriating $25,000 per annum), the latter act suspends the first act during the period of time such latter appropriation covered.

5. Where a general appropriation bill in no way specifically repeals a former act, which makes an appropriation for the same purpose for which the general appropriation bill applies, and is continuous from year to year, and applies to no particular year, and the provisions of the two statutes when considered together can be harmonized and applied, this court will follow the rule and give effect to both acts, in order to carry out the intent of the legislature, and will not invoke the rule of repeal by implication.

6. *Held*, in this case, that the provision appropriating $25.000 per annum, under the act of March 10, 1911, was suspended during the years 1911 and 1912, but was in operation after the first Monday in January, 1913.

7. *Held*, that sec. 101 appropriates $25,000 per annum for use and expenditure under the provisions of chap. 72 of the Laws of 1911, p. 202, and was in operation January 6, 1913, and during said month, and that the plaintiff in this case having been appointed assistant adjutant general, and having performed such services, has a claim against the state for $125, and that it is the duty of the state auditor, the defendant in this action, to draw a warrant for that sum.

An original action in this court for a writ of *mandamus*.

F. A. McCall and E. G. Davis, for Petitioner.

The legislature has full and absolute power to make continuing appropriations, subject only to the restrictions contained in sec. 1, art. 8 of the state constitution. (*In re Continuing Appropriations,* 18 Colo. 192, 32 Pac. 272; *Gilbert v. Moody,* 3 Ida. 3, 25 Pac. 1092; *State v. Burdick,* 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266.)

The effect of the passage of the general appropriation bill was merely to suspend during the life of such bill that portion of sec. 101, referred to, and, upon the expiration of the biennial period covered by said bill, sec. 101 automatically became operative, and it now has precisely the same force and effect

which it had prior to its suspension. (*State ex rel. State v. Burdick,* 4 Wyo. 290, 33 Pac. 131; *United States v. Fisher,* 109 U. S. 146, 3 Sup. Ct. 154, 27 L. ed. 885; *United States v. Mitchell,* 109 U. S. 146, 3 Sup. Ct. 151, 27 L. ed. 887.)

"A repeal removes the law entirely; but when suspended it still exists and has operation in every respect except wherein it has been suspended." (*Mernaugh v Orlando,* 41 Fla. 433, 27 So. 34; Sutherland's Stat. Cons., sec. 288; 36 Cyc. 1101; *Brown v. Barry,* 3 Dall. (U. S.) 365, 1 L. ed. 638; *Cassell v. Lexington H. & P. Turnpike Road Co.,* 10 Ky. Law 486, 9 S. W. 502, 701; *Heinssen v. State,* 14 Colo. 228, 23 Pac. 995.)

J. H. Peterson, Attorney General, and J. J. Guheen and T. C. Coffin, Assistants, for Defendant.

A subsequent statute, which is clearly repugnant to a prior one, necessarily repeals the former, although it may not do so in terms. (*People v. Lytle,* 1 Ida. 143.)

This court has heretofore in very plain language recognized the correctness of the principle of providing for the general expenses of the state government for a period of two years. (*Gooding v. Proffitt,* 11 Ida. 386, 83 Pac. 230; *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246.)

Statutes are repealed by implication where it is shown that latter statute intended to cover matter covered by first statute. (*Mack v. Jastro,* 126 Cal. 130, 58 Pac. 372; *Smith v. Mathews,* 155 Cal. 752, 103 Pac. 199.)

In the following cases courts have held statutes to be suspended: *United States v. Fisher,* 109 U. S. 146, 3 Sup. Ct. 154, 27, L. ed. 885; *State v. Burdick,* 4 Wyo 290, 33 Pac. 131; *Riggs v. Pfister,* 21 Ala. 469; *Riggs v. Brewer,* 64 Ala. 282.

STEWART, J.—This is an application for a writ of mandate. The case is submitted upon the pleadings. The facts as disclosed by the complaint and answer are as follows: That the defendant, Fred L. Huston, is the state auditor; that the plaintiff, during the month of January, 1913, was the duly appointed, qualified and acting assistant adjutant general of

the state of Idaho; that on the 1st day of February, 1913, the petitioner presented to the defendant, the state auditor, at his office, a duly verified claim against the state of Idaho for the sum of $125; that such claim conforms in all respects to the requirements of law governing the presentation of such claims, and represents the amount due plaintiff from the state of Idaho for services rendered during the month of January, 1913; that he demanded that the defendant issue a warrant on the state treasury for the said sum of $125, and the defendant refused to issue said warrant and has since said time refused to issue the same.

In the answer of defendant it is claimed that the reason for refusing to issue the warrant to pay plaintiff's claim is based upon the fact that no appropriation has been made by the legislature for the payment of the salary of the assistant adjutant general for the month of January, 1913, or for any period subsequent to the first Monday of January, 1913.

The contention made by the state auditor arises by reason of the conflict between two acts of the state legislature. The plaintiff relies upon secs. 11 and 101 of chap. 72 of an act providing for the organization, discipline and regulation of the organized militia of this state, known as the National Guard of Idaho, Laws of 1911, p. 202. Sec. 11, among other things, provided: "There shall be appointed by the Governor on the recommendation of the Adjutant General, an Assistant Adjutant General who shall have the rank of Major. The Adjutant General shall receive as a yearly compensation the sum of $2,000, payable in equal monthly instalments, and the Assistant Adjutant General shall receive as a yearly compensation the sum of $1,500 payable in equal monthly instalments."

Sec. 101 provides: "To carry out the provisions of this act, a continuing appropriation of $25,000 per annum is hereby made out of any money in the state treasury not otherwise appropriated, and the use or expenditure of the same sum hereby appropriated shall not be limited to any particular year."

It will be seen from these two sections that the assistant adjutant general is to receive $125 a month, payable in

monthly instalments, and under the provisions of sec. 101 an appropriation is made of money in the state treasury in the sum of $25,000 per annum as provided for by the legislature, and this appropriation is not to be limited to any particular year.

The foregoing chapter providing for the organization of the National Guard of Idaho was approved March 10, 1911. The same legislature enacted chap. 86, Laws of 1911, p. 319, entitled "Making appropriation for the payment of salaries and compensation of officers and employees of the state of Idaho and the general expenses of state government and the supporting and maintaining of the state institutions for the period commencing on the first Monday of January, 1911, and ending on the first Monday of January, 1913." This is a general appropriation bill providing for an appropriation of the funds of the state for carrying on the state government for the time fixed by the act and includes the compensation of officers and employees of the state. In that chapter is the following provision: "That the following sums of money, or so much thereof as may be necessary, are hereby appropriated for the payment of salaries and compensation of the state officers and employees of the State of Idaho and the general expenses of state government, and for the support and maintenance of the several state institutions for the period commencing on the first Monday of January, 1911, and ending on the first Monday of January, 1913 . . . . Adjutant General. For all expenses relating to the National Guard of Idaho, and the Idaho Reserve Militia, including the salaries of officers and subordinates, as per House Bill No. 156, $45,000." House Bill No. 156 is chap. 72, above referred to, in which is found the continuous appropriation of $25,000 for the purposes of carrying out the act.

The question thus presented is: Does sec. 1 of chap. 86 as above quoted, repeal the provisions of sec. 101, chap. 72, Laws of 1911, quoted above? Sec. 13, art. 7 of the constitution of this state clearly limits the power of any officer created under the constitution and laws of the state in paying out of the state treasury money, except upon appropriation made by

law. This section provides: "No money shall be drawn from the treasury but in pursuance of appropriations made by law." This limitation of the power of the state auditor makes it necessary to determine whether the provisions relating to the continuous appropriation provided in the act approved March 10, 1911, were in force after the first Monday of January, 1911, for the years 1911 and 1912. This court, in the case of *Gilbert v. Moody,* 3 Ida. 3, 25 Pac. 1092, in discussing a similar statute, held: "The act in question makes the appropriation. It fixes the compensation, the time of payment, and authorizes the comptroller to draw his warrant to pay the same when due."

The supreme court of Wyoming, in the case of *State v. Burdick,* 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266, in discussing a similar statute, says: "The first state legislature provided for the compensation of presidential electors in a special act regulating their duties and time and place of meeting. No specific appropriation was made otherwise than by this act, and none was necessary, as the appropriation in the act itself was sufficient, and is a perpetual one, so long as the law is in force. It is clear that the act creating the office of state examiner does, in sec. 27 thereof, make an appropriation at least for the salary of such officer, which is a continuing appropriation."

There can be no question but that the act of March 10, 1911, made an appropriation of $25,000 per annum for carrying out the provisions of the act providing for the organization of the national guard, and that such appropriation was made a continuing appropriation and was not limited to any particular year. In using this language the legislature intended that the appropriation was not limited to any particular year, and that the legislature waived the right to fix a different appropriation for any particular year. Exigencies might arise, or necessities might appear which would necessitate either a suspension of the amount appropriated by this act, or the fixing of a higher or lower appropriation, as such necessities might justify. This intention of the legislature is clearly demonstrated by the provisions of chap. 86, wherein

the same legislature passed a general appropriation act just four days later than chap. 72, and in said later act a special appropriation is made "for all expenses relating to the National Guard of Idaho and the Idaho Reserve Militia, including the salaries of officers and subordinates, as per House Bill No. 156, $45,000." This appropriation was for a period commencing on the first Monday of January, 1911, and ending on the first Monday of January, 1913, and covered the entire years of 1911 and 1912, and suspended the continuous appropriation made of $25,000 per annum as provided in chap. 72 of the act of March 10, 1911.

It will be observed from the provisions of the general appropriation bill, chap. 86, Laws of 1911, that it in no way specifically repeals the act of March 10, 1911, and the provisions of the two statutes being in conflict, and notwithstanding such conflict, when considered together being such that they can be harmonized and applied, the courts usually adopt the rule giving effect to both acts in order to carry out the intent of the legislature, and will not invoke the rule of repeal by implication.

The legislature no doubt, upon second thought, recognized the fact that by the act of March 10, 1911, the legislature had enacted a general act which was intended as a permanent code for the military establishment of the state, and that such act provided for a continuous appropriation which was a permanent feature of the bill, and was intended to be permanent, the same as the bill itself; and desiring to reduce the total appropriation and thereby reduce taxation, thought proper and necessary to reduce the expenditure provided in the act of March 10, 1911, and therefore reduced such appropriation and suspended the act of March 10, 1911, and fixed the appropriation at $45,000 for two years, thus reducing the appropriation $5,000 from that which had been provided for in the former act.

It is clear from the provisions of the two bills that this was the intention of the legislature. The supreme court of Colorado, in the case of *In re Continuing Appropriations,* 18 Colo. 192, 32 Pac. 272, in considering similar statutes held:

"The fact that in several of the states of this Union it has been found necessary to inhibit the making of continuing appropriations furnishes an argument against the policy of such laws that will no doubt be given due weight by the legislature; but with the policy or expediency the courts have nothing to do; the power of the legislature to make the appropriation being conceded. We think the legislature will be able to apply the general principles herein announced to the several acts mentioned, as occasion for so doing may arise."

Applying this rule to the present case, and recognizing that there is no constitutional inhibition against the legislature making a continuous appropriation, the effect of a continuous appropriation may be and should be controlled by subsequent legislation, and after a continuous appropriation has been made, subsequent legislatures of the state have the power and authority to either repeal or amend the act making the continuous appropriation or suspend the provisions of the act making such appropriation as applied to any period of time as may be determined by the legislature. This rule is approved in *State v. Burdick,* 4 Wyo. 290, 33 Pac. 131; *United States v. Fisher,* 109 U. S. 146, 3 Sup. Ct. 154, 27 L. ed. 885; *United States v. Mitchell,* 149 U. S. 146, 3 Sup. Ct. 151, 27 L. ed. 887.

In the case of *Mernaugh v. Orlando,* 41 Fla. 433, 27 So. 34, the supreme court of Georgia, in considering this question, held: "A repeal removes the law entirely, but when suspended it still exists and has operation in every respect except wherein it is suspended."

The supreme court of the United States in *Brown v. Barry,* 3 Dall. (U. S.) 365, 1 L. ed. 638, in discussing this question holds that where two acts have been passed at the same session, they are to be construed so that both may have effect if possible, and applying this rule says: "The manifest intent of the suspending act was, that the act repealed by the repealing act should continue in force until a day then future, the first of October, 1793. It could have had no other intent. And the intent of the legislature, when discovered, must pre-

vail, any rule of construction declared by previous acts to the contrary notwithstanding.''

Many other cases might be cited, but the authorities, as a. rule, hold, especially in cases where appropriations have been made to pay salaries and for other services, which are continuous, that a subsequent act making an appropriation to pay the salaries of such officers or services for a certain period of time suspends the continuous appropriation, and the appropriation made for the sum for which the salaries are fixed by subsequent act has effect during such suspension, and the general appropriation revives at the expiration of the termination of the period for which the special appropriation is made. In other words, the legislature has the power to fix and determine, where there is no constitutional inhibition, the expenses and costs which shall be expended and paid for out of the funds of the state and the salaries of the various officers who are provided for to carry out the administration of the laws of the state; and this may be done by the passage of proper legislative acts, within the inhibition provided in the constitution.

In the present case we are of the opinion that the appropriation made of $25,000 under the act of March 10, 1911, was suspended during the years 1911 and 1912, but was in operation after the first Monday in January, 1913.

We deem it proper in this opinion to call the attention of the legislature to the two methods adopted in these two acts of appropriation; one a continuing appropriation of a specific amount to be used in the future, while the other policy is for the appropriation of a specific sum for a certain period, usually during the time existing between the times fixed for the legislature to meet. Several of the states have found it necessary to prohibit the making of continuing appropriations. This court, however, expresses no opinion as to the policy or expediency of these two policies, as the court has nothing to do with such policy, as the policy of making appropriations is purely a legislative authority conferred by the constitution of the state. We are of the opinion, however, that where the legislature does make an appropriation for a specific purpose

to extend over a certain period of time, and the appropriation is not sufficient to meet the expenses of the administration in carrying out the purpose for which the appropriation has been made, that such deficiency cannot be charged against or paid out of another appropriation made for a period subsequent to the appropriation during which such deficiency arose. This is clearly the requirements of the legislature.

It is therefore ordered that a writ of mandate issue, directed to Fred L. Huston, state auditor, defendant, requiring said state auditor to forthwith issue a warrant on the treasury of the state of Idaho for the sum of $125 in favor of the plaintiff in payment of the amount due him for services rendered as assistant adjutant general for one month beginning January 6th, 1913.

Sullivan, J., concurs.

AILSHIE, C. J., Concurring.—I concur in the conclusion that the writ should issue in this case directing the state auditor to draw his warrant in favor of the plaintiff for one month's salary, being the month commencing on the first Monday of January, 1913. I think the general appropriation act, approved March 14, 1911, had the effect of suspending the operation of sec. 101 of the militia act of that session (Sess. Laws 1911, p. 226) for the period covered by the general appropriation act. The comment made, however, as to the method of paying any deficiency created in that or any other department leads me to call attention to sec. 6 of the general appropriation act, approved March 14, 1911 (Sess. Laws 1911, p. 328). The portion of that section applicable here reads as follows:

"No officer, employee, or state board of this state, or board of regents or board of trustees of any institution in this state shall have power to create any deficiency, nor shall they create any deficiency in excess of the appropriations made by the law for the specific purpose or purposes hereinbefore in this Act provided. Any indebtedness attempted to be created against the state in violation of the provisions of this act, or any in-

debtedness attempted to be created against the state in excess of the appropriations provided for in any act shall be. void.''

It will be seen at once that no board or officer of this state had any authority in law to create any deficiency, and that any deficiency created was in violation of law, and constitutes no legal claim or obligation whatever against the state. It also served as notice to any person dealing with any state officer, board or employee of the state that any service performed or material furnished to the state in excess of the appropriations made was wholly unauthorized and would create no claim whatever against the state. The practice of the various boards, employees and departments creating deficiencies in the hope that a succeeding legislature will pay them is demoralizing and wholly wrong, and can have no sanction whatever by the judicial department of the state government. This is especially true when confronted by the provisions of a statute so positive as sec. 6 of the foregoing act.

Sullivan, J., concurs.