(July 3, 1924.)

## N. D. JACKSON, Plaintiff, v. E. G. GALLET, State Auditor of the State of Idaho, Defendant.

### [228 Pac. 1068.]

ACT TO ORGANIZE IDAHO STATE BAR—REQUISITES OF VALID APPROPRIA-
TION—TITLE TO ACT — ADMINISTRATIVE BOARD — SPECIAL CORPORA-
TION—SPECIAL ACT.

1. The mere declaration in a legislative act that certain charges against the state must be paid out of a separate fund in the state treasury on the order of a board of commissioners created by the act does not constitute an appropriation of state money from said fund.

Publisher's Note.

What constitutes a legislative appropriation, see notes in 22 **Am. St.** 638; **Ann. Cas.** 1915A, 1240.

2.  While no set form of words is required to make a legislative appropriation of money in the state treasury, the language in an act should show an intent on the part of the legislature to make an appropriation of such money within the meaning of the constitution, and the court should not be called upon to infer from doubtful or ambiguous language that it was the intention of the legislature to appropriate such public funds as would be necessary to carry out the purposes of the act.

3.  Where the title states, as one of the purposes of the act, "to relieve the state from the cost of holding examinations for admission to the bar," but the body of the act makes no provision for such relief, the title to that extent is delusive and misleading.

4.  Where the title of a legislative act does not indicate or suggest an appropriation of state money, but negatives the idea of such appropriation, those portions of the act which purport to appropriate state money must fail.

Original petition for Writ of Mandate. *Writ denied and proceeding dismissed.*

Hawley & Hawley, H. B. Thompson, Frank T. Wyman, Oppenheim & Lampert and S. S. Griffin, for Plaintiff.

Specific words of appropriation are not necessary in an act if from the words of the act the intent of the legislature to appropriate can be determined and the extent of the appropriation can be ascertained. (*Gilbert v. Moody*, 3 Ida. 3, 25 Pac. 1092; *Kingsbury v. Anderson*, 5 Ida. 771, 51 Pac. 744; *Reed v. Huston*, 24 Ida. 26, 132 Pac. 109; *Rich v. Huston*, 24 Ida. 34, 132 Pac. 112; *In re Huston*, 27 Ida. 231, 249, 147 Pac. 1064; *Jeffreys v. Huston*, 23 Ida. 372, 129 Pac. 1065; *Epperson v. Howell*, 28 Ida. 338, 154 Pac. 621; *Herrick v. Gallet*, 35 Ida. 13, 204 Pac. 477; *Blaine County Inv. Co. v. Gallet*, 35 Ida. 102, 204 Pac. 1066; C. S., secs. 1269, 1272, 1274 (Sess. Laws 1923, chap. 108).)

Historical interpretation of and practice under a constitutional provision may be considered by the court in determining the meaning of such provision. (Lewis' Sutherland Stat. Const., 2d ed., pp. 884, 885.)

A title need not index the contents of an act; it is sufficient if it express the subject, since all provisions germane and incidental to the subject are covered thereby; provisions

not incongruous, and having a proper relation to, the subject may be included in the act without mention in the title, and before the court will hold any provision not properly included under the title, the departure must be plain and manifest. (Art. 3, sec. 16, Const. of Idaho; Lewis' Sutherland Stat. Const., 2d ed., secs. 111, 112, 115, 118, 127–129, 131; *Cole v. Hall,* 103 Ill. 30; *McCashin v. State,* 44 Ind. 151, 178; *Klein v. Kinkead,* 16 Nev. 195; *Martin v. Tyler,* 4 N. D. 278, 60 N. W. 392, 25 L. R. A. 838; 25 R. C. L., "Statutes," p. 858; *State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295. For titles not referring to an appropriation, where the act has been considered as carrying one, see Sess. Laws 1899, p. 134; 1869, p. 96.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Defendant.

The act does not provide for a valid appropriation of public moneys. (Art. 7, sec. 13, Const. of Idaho.)

An appropriation to be valid must give authority from the legislature to the proper officers to pay from the public moneys a specified or maximum sum, and no more, for specified purposes, and no other. (*Kingsbury v. Anderson,* 5 Ida. 77, 51 Pac. 744; *Kroutinger v. Board of Examiners,* 8 Ida. 463, 69 Pac. 279; *Jeffreys v. Huston,* 23 Ida. 372, 129 Pac. 1065; *Epperson v. Howell,* 28 Ida. 338, 154 Pac. 621; *Herrick v. Gallet,* 35 Ida. 13, 204 Pac. 477; *Blaine Co. Investment Co. v. Gallet,* 35 Ida. 102, 204 Pac. 1066; *State ex rel. Davis v. Eggers,* 29 Nev. 469, 91 Pac. 819, 16 L. R. A., N. S., 630.)

An appropriation will not be inferred from doubtful or ambiguous language. (*In re Continuing Appropriation,* 18 Colo. 192, 32 Pac. 272; *Blaine Co. Investment Co. v. Gallet, supra.*)

The subject of a legislative act must be expressed in the title. (Art. 3, sec. 16, Const. of Idaho.)

The courts cannot enlarge the scope of the title and it is no answer to say that the title might have been more com-

prehensive when the legislature has not seen fit to make it so. (*Turner v. Coffin*, 9 Ida. 338, 74 Pac. 962; Sutherland on Stat. Construction, sec. 87, p. 94; Cooley, Constitutional Limitations, 6th ed., p. 178.)

The purpose of article 3, sec. 16, of the constitution, is to prevent deception of the people and the members of the legislature against provisions in the body of the act of which the title gives no indication. (*Turner v. Coffin, supra;* Cooley, Const. Limitations, *supra; Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *Northwestern Mfg. Co. v. Chambers,* 58 Mich. 381, 25 N. W. 372.)

A title so general as practically to conceal the subject of the statute, or a delusive or false title, will be treated as not constitutionally framed. (Sutherland on Stat. Construction, sec. 82; *Coxe v. State,* 144 N. Y. 396, 39 N. E. 400.)

It is not enough that the act embrace but a single subject and that all parts are germane, but the title must express the subjects comprehensively enough to include all of the provisions in the body of the act. (Sutherland on Stat. Construction, sec. 89.)

BUDGE, J.—This proceeding was commenced for the purpose of procuring the issuance of a writ of mandate requiring defendant, as state auditor, to certify to the state board of examiners for approval a claim of plaintiff for expenses incurred by him in the performance of his duties as a member of the board of commissioners of the Idaho state bar, to which position he was elected under the provisions of chapter 211, 1923 Session Laws. To the application the defendant filed a demurrer setting up, first, that there is no appropriation of funds for the purpose of paying the claim in question or any claim made under the act; second, that the act violates the provisions of art. 3, sec. 16 of the constitution of this state in that the subject is not embraced in the title of the act; third, that the act violates the provisions of art. 11, sec. 2 of the constitution of this state in that it grants a special charter of incorporation;

39 Idaho.—25

and, fourth, that it violates the provisions of art. 3, sec. 19 of the constitution of this state in that it creates a corporation. We shall discuss the points raised by the demurrer in the order as above stated.

The first question involved is whether the language of sections 9 and 10 of chapter 211, 1923 Session Laws, constitutes an appropriation for the payment of plaintiff's claim for actual and necessary expenses incurred by him in attending a meeting of the Idaho state bar. Section 9 reads as follows:

"Every member of the Idaho state bar shall, prior to the first day of July of each year, pay into the state treasury as a license fee the sum of five dollars and the fund thereby created shall constitute a separate fund to be disbursed by the state treasurer on the order of the board of commissioners, after the usual and necessary examination and approval has been made by the state board of examiners."

Section 10 provides that:

"For the purpose of carrying out the objects of this act, and in the exercise of the powers herein granted, the board shall have power to make orders concerning the disbursement of said fund, but no member of the board shall receive any other compensation than his actual necessary expenses connected with attending meetings of the board, or in the performance of the duties directed by the board."

Sec. 13, art. 7 of the constitution provides that:

"No money shall be drawn from the treasury, but in pursuance of appropriations made by law."

In discussing this provision of the constitution, particularly with reference to what constitutes an appropriation within the meaning thereof, this court, in the case of *Blaine County Investment Company v. Gallet,* 35 Ida. 102, 106, 204 Pac. 1066, had occasion to make the following observations:

"It will be noted that sec. 13 of art. 7 of the constitution does not define an appropriation nor specify when or how an appropriation by law shall be made, and these important matters are, therefore, proper subjects for judicial interpretation."

Several definitions have been given of the proper meaning of the word "appropriation" as contained in this section of the constitution and various statutory enactments. In *Blaine County Investment Co. v. Gallet, supra,* it is said:

"An appropriation in this state is authority of the legislature given at the proper time and in legal form to the proper officers to apply a specified sum from a designated fund out of the treasury for a specified object or demand against the state."

To the same effect, see *Kingsbury v. Anderson,* 5 Ida. 771, 51 Pac. 744; *Kroutinger v. Board of Examiners,* 8 Ida. 463, 69 Pac. 279; *Jeffreys v. Huston,* 23 Ida. 372, 129 Pac. 1065. An examination of sections 9 and 10 of the act will disclose that every member of the Idaho state bar is required to pay to the state treasurer as a license fee the sum of five dollars prior to the first day of July of each year and the fund thereby created shall constitute a separate fund. In these sections the legislature has sought to delegate the disbursement of this separate fund to the commission without limitation and in the absence of any act upon the part of the legislature as to the time, mode or manner of its disbursement. In fact, the statute negatives the right of the legislature to do other than delegate to the commission the power of disbursement and has left to the commission entirely how and for what specific purpose or object the money shall be expended. It is therefore clearly not an appropriation by the legislature of a specific sum from a designated fund out of the treasury for a specific object or demand against the state. The commission is clothed with authority "to make orders concerning the disbursement of said fund." What orders, when made, the manner of making them and the purpose or object, as well as the amount of the disbursement of the separate fund, are delegated to the commission and rest in their discretion. The only limitation upon the fund relates to the actual and necessary expenses of the members of the commission in attending meetings of the board. When the meetings are to be held and where held and the maximum expense authorized to be incurred by the commission in holding these meetings are left entirely to

the commission, the legislature having failed to make any . provisions relating thereto. The act further provides that the commission may disburse the fund in the performance of the duties directed by the board. What these duties are, where they are to be performed, the manner of their performance and the maximum sum to be disbursed are not provided for in the act. In the case of *Epperson v. Howell*, 28 Ida. 338, 343, 154 Pac. 621, former Chief Justice Morgan 'defined the word ''appropriation'' within the meaning of sec. 13, art. 7 of the constitution as follows:

''An appropriation, within the meaning of the section of our constitution last above quoted is authority from the legislature expressly given in legal form, to the proper officers, to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other.''

There is no maximum amount appropriated out of which the claim in question can be paid. The mere declaration that certain charges against the state must be paid out of the state treasury on the order of a board of commissioners does not make an appropriation and is not an authorization that a specified sum and no more shall be used for a specific purpose and no other. While it is true that no set form of words is necessary to make an appropriation, language used in an act should show an intent on the part of the legislature to make an appropriation within the meaning of the constitution and the court should not be called upon to infer from doubtful or ambiguous language that it was the intention of the legislature to appropriate the public funds which would be necessary in order to sustain the theory of plaintiff that an appropriation was made under sections 9 and 10 of this act. In our opinion the language used in those sections of the act is so doubtful, ambiguous and uncertain that we cannot say that it was the intention of the legislature to make an appropriation of the public funds out of which the claim of plaintiff. can be paid.

We think it is clear that this act violates the provisions of art. 3, sec. 16 of the constitution in that the subject is not embraced in the title of the act. That section reads as follows:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The title of the act in question is as follows:

"Protecting the public against the improper, unethical and unauthorized practice of the law profession, and to relieve the state from the cost of holding examinations for admission to the bar, and providing for the necessary and proper organization and discipline of attorneys at law; regulating the practice of law and providing for the organization and government of the Idaho state bar including the fixing of license fees and examination of applicants to the bar and discipline of members thereof, and repealing all acts inconsistent herewith."

In the title of the act it is distinctly stated that the state is to be relieved from the cost of holding examinations for admission to the bar, entirely negativing the idea of any appropriation of state moneys for such purposes. In the body of the law no mention is made of how or in what manner the state is to be relieved from the cost of holding examinations for admission to the bar. On the contrary, sections 9 and 10 purport to appropriate state moneys, a major portion of which will be used for purposes which, according to the title, the state was to have been relieved of any burden of expense. The least we can say for the language used in the title of the act when read in conjunction with sections 9 and 10 of the act is that it is delusive. It will not do to say that because license fees are placed upon and collected from a class, to wit, attorneys, and paid into the state treasury that the expense of carrying out the provisions of the act is not an expense to the state. To so hold would in effect be to say that the license fees so paid into the state treasury are not state moneys, and the purposes for which the money so raised is used are private and not public in their nature. A main source of revenue of this

state is money derived from license fees. Shall we say that because these fees are collected from classes of persons in the state, that for such reason they are not state moneys, and if these moneys are, in turn, appropriated the purposes for which they are used are not an expense of the state? License moneys paid into the state treasury are state moneys, and if legally paid out, must be for expenses of the state. (Art. 8, sec. 2, Idaho Const.) Legislators reading the title of the act could reach but one conclusion, namely, that the state would be relieved of the cost of holding examinations for admission to the bar, and that the body of the law made provision for such relief, which it did not do. A title which is delusive or false violates the constitution. (*Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873; *Turner v. Coffin*, 9 Ida. 338, 74 Pac. 962.) Hence, so far as an appropriation is concerned, since the title does not suggest an appropriation of state moneys but negatives the idea, those portions of the act which attempt to appropriate state moneys must fail.

In connection with the sufficiency of the title, it is to be observed that the act creates a board of commissioners of the Idaho state bar, which board, by the act creating it, is given powers extraordinary over the members of the Idaho state bar. The creation of the board and the grant of powers in effect, and we think it is so intended, confer upon the Idaho state bar self-government. The real purpose of the act is most certainly "outside of the ordinary and usual scope of legislation," especially if, as contended by counsel for plaintiff, an administrative arm of the state is all that is intended to be created, and being and because "outside the ordinary and usual scope of legislation," the title should afford a suggestion of the enactment or true purpose which it conceals. (*Katz v. Herrick, supra.*) The practical regulation of the practice of law and the admission of attorneys to practice has been entrusted to the courts of this state from territorial days, and in view of the language used in the title may anyone reasonably be justified in assuming that this long-continued practice is to be discarded and in its stead the radical departures proposed by the act

substituted? One may safely concede that a subject of an act includes by reasonable inference all those things which will or may facilitate the accomplishment thereof, yet "when one reading a bill with a full scope of the title thereof in mind, comes upon provisions which he could not reasonably have anticipated because of their being in no way suggested by the title in any reasonable view of it, they are not constitutionally covered thereby." (*Diana Shooting Club v. Lamoreaux,* 114 Wis. 44, 91 Am. St. 898, 89 N. W. 880.)

"A title so general as practically to conceal the subject of the statute, or a false or delusive title, will be treated as not constitutionally framed." (1 Sutherland on Statutory Construction,.2d ed., sec. 123, p, 208.) Hence the section creating the board of commissioners of the Idaho state bar and those sections conferring powers upon it being void, the entire act must fall, there being no other provisions for carrying out the purposes of the act. (*Dumas v. Bryan,* 35 Ida. 557, 207 Pac. 720.)

If this act creates a special corporation and is a special act passed for that purpose, it is in conflict with art. 3, sec. 19, of the constitution, and is therefore void. The characteristic which distinguishes a corporation from other organizations or boards is the capacity to act within the powers granted, as a legal entity, apart from the individuals who compose its members. In the absence of this characteristic there is no corporation. The board of commissioners of the Idaho state bar has the essential attributes of a corporation as well as all of the ordinary powers and privileges of a corporation. It has perpetual succession, has a common seal, is authorized to receive gifts and bequests designed to promote the objects for which it is created and the betterment of conditions surrounding the practice of law. It has power to make rules and by-laws concerning the election and tenure of its officers; power to make rules and by-laws for the control and regulation of the business of the board; power to make rules and by-laws for the control and regulation of the business of the Idaho state bar. It has power

to make rules governing the examinations and admission of applicants to practice law and for their discipline, which rules are the only rules approved by any body and these rules are approved by the supreme court.° It has power to create subcommittees to administer discipline to members of the Idaho state bar.

"A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality, and, if the expression may be allowed, individuality; properties by which a perpetual succession of many persons are considered as the same, and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity, of perpetual conveyances for the purpose of transmitting it from hand to hand. It is chiefly for the purpose of clothing bodies of men, in successions, with these qualities and capacities, that corporations were invented, and are in use. By these means, a perpetual succession of individuals are capable of acting for the promotion of the particular object, like one immortal being. But this being does not share in the civil government of the country, unless that be the purpose for which it was created. Its immortality no more confers on it political power, or a political character, than immortality would confer such power or character on a natural person. It is no more a state instrument than a natural person exercising the same powers would be." (*The Trustees of Dartmouth College v. Woodward* (per Marshall, C. J.), 4 Wheat. (U. S.) 635, 4 L. ed. 629, 659.)

"A corporation is defined by Mr. Justice Blackstone to be a franchise. 'It is,' says he, 'a franchise for a number of persons, to be incorporated and exist as a body politic, with a power to maintain perpetual succession, and to do

corporate acts, and each individual of such corporation is also said to have a franchise, or freedom.' This franchise, like other franchises, is an incorporeal hereditament, issuing out of something real or personal, or concerning or annexed to and exercisable within a thing corporate. . . . . The subjects of the grant are not only privileges and immunities, but property, or, which is the same thing, a capacity to acquire and to hold property in perpetuity. . . . The rights acquired by the other contracting party are those of having perpetual succession, of suing and being sued, of purchasing lands for the benefit of themselves and their successors, and of having a common seal and of making by-laws.'' (*The Trustees of Dartmouth College v. Woodward* (per Washington, J.), 4 Wheat. (U. S.) 665, 4 L. ed. 629, 664.)

It will be conceded that the ordinary powers of a corporation are (1) perpetual succession, (2) to sue and be sued, (3) to receive and to grant by its corporate name, (4) to purchase and to hold lands and chattels, (5) to have a common seal, and (6) to make by-laws. While it is true that the act does not in specific terms provide that the Idaho state bar, by its board of commissioners, may make grants in its corporate name, it is provided that it may receive gifts and bequests designed not only to promote the objects for which the corporation is created but for the betterment of conditions surrounding the practice of law. It is necessarily implied that it may dispose of the property so received. That it may sue and be sued in reference to such property would follow by implication. While it is not specifically named as a corporation it possesses all of the attributes and powers of a corporation and is so referred to. The body created by section 2 of the act is designated as a ''board of commissioners of the Idaho state bar.'' While it is true that the test of a corporation does not lie in its name, yet the name herein used is significant as to the intent when taken in connection with the character of its charter and the power conferred therein, which latter, of course, determines the true nature of the body created. The board of commissioners so designated by the act is to all intents and

purposes a board of directors of the corporation created by the act and possesses, and so intended to possess, broader powers than a mere administrative board of the state.

Further on in the act, to wit, section 7, we find that on the fourth Tuesday following the certification of the names of the commissioners, the commissioners shall meet at the office of the clerk of the supreme court and organize by the election of the following *officers of the Idaho state bar,* and *its* board of commissioners, namely, a president, a vice-president and a secretary. Now, it will not do to say that the Idaho state bar and the state of Idaho are synonymous terms. In other words, the Idaho state bar or its commission cannot be construed to be an administrative board of the state and may not function as an administrative board or commission of the state. The language of the act will warrant no such interpretation. There is therefore no merit in the contention that the Idaho state bar is an administrative board of the state of Idaho.

We also find provision for an annual meeting of the Idaho state bar presided over by the president of the Idaho state bar, which official we have heretofore seen is elected under the provisions of section 7 of the act. This annual meeting we observe is to be devoted to a discussion of the affairs of the bar and the administration of justice, and at such time the annual election shall close, the ballots be canvassed and the result announced. The annual election referred to has reference to the selection of the successors to the commissioners whose terms expire. And as further bearing upon the question of language used which clearly tends to show that it was the intention of the legislature to create and organize the Idaho state bar association, reference is made to section 4 of the act. In this section the *"Bar Association"* created by the act is divided into divisions, consisting of northern, western and eastern, which divisions are also referred to in section 16 of the act. Reference is also made in that same section to the annual meeting of the "Bar Association," which annual meeting is provided for in section 16 of the act.

We cannot roughly brush aside as of no consequence or effect the language of the act which refers to the "Idaho state bar and its board of commissioners" where the "Bar Association" is divided into divisions, where provision is made for the annual meeting of the Bar Association and where provisions are made for the election of the president of the Idaho state bar. If the legislature intended only that an administrative board of the state was to be created, it certainly did not say so. On the contrary, it used language which clearly and unequivocally negatives that idea. The Idaho state bar could not have been more effectively incorporated and organized had the legislature specifically, instead of incorporating its board of directors, incorporated the Idaho state bar itself. The most charitable view we can give to the act in view of the language used, so far as the creation of an administrative board of the state is concerned, is that if such a board is created then by the same act creating it the Idaho state bar, a private corporation, is most effectively incorporated and organized by special act, which is prohibited by art. 3, sec. 19 of the constitution. There is nothing to prevent the legislature providing by general law for the voluntary incorporation of the Idaho state bar but the state cannot force its bounty on private persons by incorporating them without their consent and against their will. (*State v. Cosgrove*, 36 Ida. 278, 210 Pac. 393; *Spotswood v. Morris*, 12 Ida. 360, 85 Pac. 1094, 6 L. R. A., N. S., 665.) This act does that very thing.

In conclusion, there seems to be no good reason for the selection between lawyers as a class and members of any other calling as a class and the enactment of special legislation essentially conferring upon lawyers as a class corporate powers and independent action to the exclusion of control by general legislative enactment. To uphold legislation of the character before us would make possible the incorporation and independent action of the members of any other class, calling or occupation, and instead of a representative democracy we would have independent action by incorporated individuals composed of different callings, occupations

or conditions answerable to themselves, governed by boards and commissions until we would become a government made up of classes amenable to only such by-laws, rules or regulations that in their judgment would be conducive to their best interests. These various classes so incorporated under provisions similar to the one involved would pay into the treasury fees and disburse the same in their own discretion and independently of legislative control. If this law can be sustained upon the theory that it is not unconstitutional for the various reasons herein suggested, then no reason exists why like legislation cannot be enacted for the benefit of bricklayers, agriculturists, bankers or any other profession or calling and all members of such classes, by legislative enactment, may be compelled to accept membership in such corporations in order to practice their profession or follow the calling of their choice.

We are not to be understood as being out of sympathy with the high purpose sought to be attained under the provisions of this act, but such purpose, however praiseworthy, cannot be accomplished by an act in direct violation of the plain provisions of the constitution.

From what has been said it follows that the writ must be denied and the proceeding dismissed, and it is so ordered.

William A. Lee, J., concurs.

WM. E. LEE, J., Concurring in Part.—I concur in the conclusion of Mr. Justice Budge solely upon the ground that the title of the act neither embraces that portion of the act which provides for an appropriation, nor is an appropriation reasonably connected with the subject expressed in the title. An appropriation is not indicated in the title; in fact, the language of the title negatives the idea of an appropriation, in that one of the purposes of the act, as announced in the title, is to relieve the state of certain expense. That portion of the act making an appropriation is void. (Const., art. 3, sec. 16.) The writ must be denied.

McCARTHY, C. J., Dissenting.—I dissent. Ordinarily I doubt the value of a dissenting opinion of any length. The subject matter of the present case, and the interest which attaches to it, both here and elsewhere, make it an exception. Moreover, as the case was originally assigned to me and I prepared an opinion for the consideration of my associates, this dissenting opinion does not involve the expenditure of time and effort which could be better expended on some other case. I will discuss the main points involved in the same order in which they are discussed in the majority opinion, as well as in the thorough and excellent briefs which have been submitted.

In order for a legislative enactment to constitute an appropriation, it must give authority to the proper officers to pay from public moneys a specific or at least a maximum sum for specific purposes. (*Kingsbury v. Anderson,* 5 Ida. 771, 51 Pac. 744; *Kroutinger v. Board of Examiners,* 8 Ida. 463, 69 Pac. 279; *Jeffreys v. Huston,* 23 Ida. 372, 129 Pac. 1065; *Epperson v. Howell,* 28 Ida. 338, 154 Pac. 621; *Herrick v. Gallet,* 35 Ida. 13, 204 Pac. 477; *Blaine County Investment Co. v. Gallet,* 35 Ida. 102, 204 Pac. 1066; *State ex rel. Davis v. Eggers,* 29 Nev. 469, 91 Pac. 819, 16 L. R. A., N. S., 630.) An appropriation will not be inferred from doubtful or ambiguous language. (*Blaine County Investment Co. v. Gallet, supra.*) No set form of words is necessary; it is sufficient if language be used covering all of the necessary elements of an appropriation as above defined. (*Kingsbury v. Anderson, supra; Herrick v. Gallet, supra.*) I conclude that all of those elements are sufficiently covered by the provisions of secs. 9 and 10 of the act and that it does appropriate the maximum amount realized by the collection of the attorneys' license fees for the purpose of carrying out its objects. The case is distinguished from *Blaine County Investment Co. v. Gallet, supra,* in the following particulars: In the latter case the act did not set aside the whole of the general fund nor state how much of it should be used, and the court would not imply legislative intention to permit the use of the entire general fund

for the purposes in question. In this case, by setting aside the entire license fees for the purposes in question, the act does fix a maximum, and the estimated amount of the fund is not disproportionate to the requirements reasonably to be anticipated.

Const., III, 16, provides:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."

It will be noticed that it requires only the subject to be stated and not the matters properly connected therewith.

"The courts must give a liberal construction to the language used by the legislature in framing the title to any given act." (*Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962.)

"Necessarily the title of an act must be brief. The object of the title is to give a general statement of the subject matter, and such a general statement will be sufficient to include all provisions of the act having a reasonable connection with the subject matter mentioned and a reasonable tendency to accomplish the purpose of the act. The object of the title is not to state the reason for the passage of the act, or to give an index to its contents, but to give a general statement of the subject matter of the act. (*Tarantina v. Louisville & N. R. R. Co.,* 254 Ill. 624, Ann. Cas. 1913B, 1058, 98 N. E. 999.) As was stated in the case of *State v. Pioneer Nurseries Co.,* 26 Ida. 332, 143 Pac. 405, and other cases therein cited, 'the title . . . . is sufficient if the act treats of but one general subject and that subject is expressed in the title.'" (*In re Crane,* 27 Ida. 671, 151 Pac. 1006.)

See, also, *State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962; *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692; *State v. Pioneer Nurseries Co.,* 26 Ida. 332, 143 Pac. 405. The purpose of this provision is to prevent deception of the members of the legislature and the people, which would result from incorporating provisions in the body of an act of which the title gives no indication. (*Turner v. Coffin, supra; Katz v. Herrick,* 12 Ida. 1, 86

Pac. 873.) A title which conceals the real subject of the statute or one which is delusive or false violates the constitution. Defendant contends that the title of this act is defective for the following reasons: (1) The title gives no indication of the intention to create a board of commissioners of the Idaho state bar, which is one of its principal objects; (2) the title is misleading and deceptive in that it says the state is relieved from the cost of holding examinations whereas the act provides that it shall be paid out of the fund realized from the license fees; (3) the title does not say that the act carries an appropriation. I will take up these objections in the order mentioned. The title indicates one of the purposes of the act is to provide for the organization and government of the Idaho state bar. The creation of a head of this organization is a matter reasonably connected with the subject matter expressed in the title and having a reasonable tendency to accomplish the purposes of the act. The creation of the commission is therefore fairly within the title. From a literal and technical point of view there may be some force in the contention that the language in the title to the effect that the state is relieved of the cost of holding examinations is inconsistent with the provision of the bill making an appropriation. When we consider the substance of things, however, there is no real contradiction. Hitherto whatever expense was incurred in conducting examinations for the bar has been paid out of the appropriation for the supreme court, which is realized out of general state taxes. The act provides that this expense shall be paid out of the license fees collected from the attorneys and not from the people of the state in general. As a matter of substance, therefore, it is true that the burden is removed from the state in general and placed upon the class of persons regulated by the act, to wit, attorneys. Therefore, if any contradiction exists, it is apparent rather than real and does not furnish ground for holding that the title is delusive or deceptive. If the expenditure of money and the making of an appropriation for that purpose are reasonably connected with the subject matter of the act, and

if the necessity for an appropriation is reasonably suggested by the title of the act, it need not be specifically expressed in the title. (*McCaslin v. State,* 44 Ind. 161; *Klein v. Kinkead,* 16 Nev. 195; *Martin v. Tyler,* 4 N. D. 278, 60 N. W. 392, 25 L. R. A. 838; 25 R. C. L., pp. 859, 860, notes 1 and 2.) Anyone reading this title would naturally infer that some expense would be necessarily incurred in carrying out the objects expressed, and that the license fees mentioned in the title would be used to defray it. No one could reasonably infer that the purpose of imposing a license fee upon the profession was merely to raise revenue rather than to defray the expenses of the organization and regulation called for by the title. I conclude that the appropriation of the license fund is reasonably connected with the subject expressed in the title and the necessity for it is reasonably indicated.

Const., XI, 2, provides:

"No charter of incorporation shall be granted . . . . except for such municipal, charitable, educational, penal or reformatory corporations as are or may be, under the control of the state."

It is admitted the case does not fall within any of these exceptions. Const., III, 19, provides that the legislature shall not pass any special law creating a corporation. It is contended that the act makes the bar association a corporation by special law in violation of these provisions; that a corporation is created because the board has certain powers and characteristics which commonly belong to corporations, for instance, a name, the right of perpetual succession, a seal, the right to hold and dispose of property. These characteristics are not peculiar to corporations. Most of our state boards and commissions have names. The right of succession granted by the act simply means that the board shall continue to exist and function in spite of change in its personnel. It can be abolished by the legislature at will. Many of our state boards and commissions have seals, for instance the public utilities commission and the industrial accident board. The board is not granted the general right

to hold and dispose of property, but simply the right to receive gifts and bequests to promote the objects for which it is created. It is argued that a corporation is created because the act refers to the board as commissioners of the Idaho state bar. The character of the board is to be determined from the powers it exercises and the duties it performs rather than from the name given it. I conclude that it is an administrative board rather than a board of directors of the bar. It is contended that the act gives the bar control of the board, and that this makes the association a corporation and the board its board of directors. The premise is not well founded. The board of commissioners is selected by ballot of the members of the Idaho state bar, but they have no control over its actions. Its disbursements are subject to the control of the board of examiners, and its actions in admitting or disciplining attorneys are subject to the control of the supreme court. The fact that a board or commission has some of the powers usually possessed by corporations does not necessarily make it a corporation. (*Duffy v. City of New Orleans*, 21 So. 179.) In the following cases boards somewhat similar in nature were held under similar constitutional provisions not to be corporations: *Duffy v. City of New Orleans, supra; Ex parte Frazer*, 54 Cal. 94; *State v. Stewart*, 74 Wis. 620, 43 N. W. 947, 6 L. R. A. 394.

Considering the act as a whole I conclude that neither the attorneys of the state nor the board of commissioners constitute a corporation under its provisions.

The legislature has power to provide for the method of appointing officers whose offices are not established by the constitution. (Const., IV, 6.) In *Ingard v. Barker*, 27 Ida. 124, 147 Pac. 293, this court, speaking through Mr. Justice Budge, said:

"The legislature may create an office or offices not otherwise provided for, nor prohibited, by the constitution, and may fix the method of filling such office or offices; and when so created, the appointment or selection of officers to fill such offices may be made either by the chief executive, or

39 Idaho.—26

by any person, board, corporation or association of individuals as provided by law, and such appointment would not be in conflict with the constitution or an improper exercise of power properly belonging to the executive department of the state government.''

Const., I, 20, provides:

''No property qualification shall ever be required for any person to vote or hold office except in school elections or elections creating indebtedness.''

Sec. 3 of the act in question provides that the board of commissioners shall be selected by members of the Idaho state bar who shall vote by ballot. Later on in the section the word ''election'' is used. The Attorney General contends that the commissioners are selected by an election within the meaning of that term as used in Const., I, 20, that the members of the bar are the electors, and that the act violates that provision of the constitution, since it limits the right to vote to members of the bar, the contention being that this is a property qualification. If the premise be sound that this is an election within the meaning of that term as used in the constitution, then the act is in-. valid. I conclude, however, that it is not an election but an appointment. The mere fact that power of selection was delegated to a body composed of several or even of many persons, and that a vote is necessary to a choice, does not make the exercise of it an election rather than an appointment. The Senate acts jointly with the Governor in exercising the appointive power of constitutional officers, and it is necessary that a vote be taken in that body, but this does not render the act any less an appointment. The members of this court appoint the clerk and law librarian and, in order to arrive at a choice, a vote must be taken. In other instances the appointing power is delegated to boards or commissions composed of several persons. Under the act in question the power of selection is delegated to a few hundred persons, comprising members of the bar. Such a difference in the number of members of the body which exercises the power would seem to be a difference merely in degree and not in principle. The mere fact that

the word "election" is used in certain places in the statute is not controlling. The court will be governed by the nature of the function delegated and exercised, and not by the name given to it. To the effect that the method of selection provided by this statute is an appointment and not an election see: *Wickersham v. Brittan,* 93 Cal. 34, 28 Pac. 792, 29 Pac. 51, 15 L. R. A. 106; *Ex parte Frazer,* 54 Cal. 94; *Brown v. Bunselmeyer,* 101 Misc. 625, 167 N. Y. Supp. 993; *State Board of Pharmacy v. Bellinger,* 138 App. Div. 12, 122 N. Y. Supp. 651; *Sturgis v. Spofford,* 45 N. Y. 446. To the effect that this method of selection is not repugnant to the constitution see: *Ingard v. Barker, supra; Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785; *Ex parte Frazer, supra; Ex parte Gerino,* 143 Cal. 412, 77 Pac. 166; *In re Bulger,* 45 Cal. 553; *Bullock v. Billheimer,* 175 Ind. 428, 94 N. E. 763; *Overshiner v. State,* 156 Ind. 187, 83 Am. St. 187, 59 N. E. 468, 51 L. R. A. 748; *Scholle v. Maryland,* 90 Md. 729, 46 Atl. 326, 50 L. R. A. 411; *State v. Vance,* 29 Wash. 435, 70 Pac. 34. In *Overshiner v. State, supra,* the court passed upon the constitutionality of an act which committed the appointment of the members of the board of dental examiners to the State Dental Association. In upholding the act the court used the following language, which is *apropos:*

"It is claimed that the statute must fail for the reason that the legislature has no constitutional warrant for bestowing police powers upon a private corporation, to be by it exercised upon the citizens of the state. We perceive no reason why a corporation, such as the one complained of, may not prove itself a repository of power as safe and salutary as an individual. The corporation is composed of practicing dentists, organized for the promotion of scientific knowledge and skill in the practice of the profession of dentistry, and which association thus stands in an intimate and well-informed relation to the subject, and possessed of a peculiar interest in the successful administration of the law. It is difficult to conceive of an appointing power with higher qualifications, or likely to be swayed by more laudable

motives; and that it is an organization of persons mutually interested in the enforcement and proper administration of the law surely furnishes no reason for its condemnation.''

If the office were one which, under the constitution or statutes, clearly had to be filled by an election, I would, of course, concede that the right of franchise could not be limited to the attorneys of the state. The office is not one which has to be filled by election. Having due regard to the substance, and construing the language used in the light of the evident purpose of the act, it seems to me that the commissioners are appointed rather than elected. If the power of selection had been exercised by the legislature itself, or committed to an executive board or to this court, it would be readily conceded that it was the power of appointment. It is just as much so when committed to the members of the bar and by them exercised.

I think the contention that the act makes the lawyers a self-governing class is without foundation. Under it they merely have a voice in the selection of the commissioners, and are subject to the payment of the license fee. They have no control over the board or its actions. They have no power to make rules, admit applicants to practice, discipline, suspend or disbar attorneys. The commissioners have power to recommend rules, recommend admission of applicants, and recommend the discipline of offenders, subject, however, to approval by the supreme court. They are in these respects an arm of that court. Surely this does not amount to anything bordering on government by classes.

In *Ingard v. Barker, supra,* this court said:

''In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, nothing but a clear violation of the constitution will justify the courts in overruling the legislative will, and where there is reasonable doubt as to the constitutionality of an act, it must be resolved in favor of the act.''

See, also, *Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *Gillesby v. Board of County Commrs.,* 17 Ida. 586, 170 Pac. 71. Thus this court in common with most others has sub-

scribed to the wholesome doctrine that an act of the legislature should not be set aside as unconstitutional unless it appears beyond all reasonable doubt that it is repugnant to some provision of the constitution. I am not convinced that such a case is made out against the act in question. It strikes me that the majority opinion resolves all doubts against the validity of the act rather than in its favor. I conclude that the writ should issue.

I am authorized to state that Mr. Justice Dunn concurs in this dissenting opinion.