14278

DACUS v. JOHNSTON, GOVERNOR, AND NINE OTHER CASES

(185 S. E., 490)

330

March, 1936.

See, also, *Heyward v. Long,* 178 S. C., 351; 183 S. E., 145.

*Messrs. Eugene S. Blease, Nathans & Sinkler, A. H. Dagnall, Robinson & Robinson, Carl Kearse, Wilton H. Earle, S. K. Nash, Edgar A. Brown* and *Randolph Murdaugh,* for petitioners,

*Messrs. C. S. Bowen* and *W. M. Smoak,* for respondent.

April 13, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

These proceedings, ten in number, which were brought by petition in the original jurisdiction of the Court, are

practically identical in their purpose and statements of fact. The disposition of one of them will be decisive of all. Therefore, for the sake of brevity, we will consider the case of *Dacus v. Olin D. Johnston, Governor, etc.,* since that case appears first upon the petition.

The petition sets forth: That the petitioner is a member of the State Highway Commission, appointed from the Thirteenth Judicial Circuit; that Olin D. Johnston is the Governor of the State of South Carolina.

That on or about December 7, 1935, Governor Johnston caused to be served on petitioner a paper entitled: "Order of suspension and rule to show cause."

That under the cause set out in that proceeding Olin D. Johnston, as Governor, attempted without a hearing to suspend petitioner from his office of State Highway Commissioner, unlawfully claiming authority for his action under the provisions of Section 1592 of the Code of 1932.

That this action of respondent in attempting to suspend petitioner from his office of highway commissioner took place on the day following the filing of the opinion of this Court in the case of *Hearon v. Calus,* reported in 178 S. C., 381, 183 S. E., 13, which held that this petitioner was a State Highway Commissioner, and entitled to perform the duties of that office without molestation.

Petitioner alleges on information, advice, and belief that this action of the respondent is in violation of the provisions of the Constitution of this State, especially those of Article 4, § 22, and Article 3, § 27, and Section 1 of the Fourteenth Amendment to the Constitution of the United States.

Petitioner alleges on information, advice, and belief that the said order of suspension was in violation of Sections 1592 and 3070 of the Code in that no hearing, nor opportunity to be heard were afforded your petitioner.

That petitioner is not such an "officer, clerk or other person charged with the disbursement of funds appropriated by the Legislature of South Carolina," within the meaning

of Sections 1592 and 3070 of the Code of 1932, and is not subject to suspension by the Governor as is provided in those sections.

That one of the grounds of suspension alleged in the order of the Gvoernor, attached as exhibit to the petition, was the action of your petitioner in voting to pay to Ben M. Sawyer his salary as Chief Highway Commissioner of the State. On information, advice, and belief that Ben M. Sawyer was entitled to be paid his salary as he was there in the active discharge of his duties and the salary was duly voted to him by the State Highway Commission under the provisions of Sections 5868 and 5869 of the Code, and his right to his salary was duly recognized by the Comptroller General and the State Treasurer under the advice of the Attorney General.

That the other ground of suspension set out in the order of the Governor was the action of your petitioner in voting to enter into reimbursement agreements with certain counties in the State in accordance with the provisions of law. Your petitioner alleges on information and belief that under the statute laws of the State the State Highway Commission had authority to enter into such agreements. That the Attorney General of the State, its chief legal adviser, had advised the Highway Commission that it could enter into such reimbursement agreements, and the action of your petitioner thereabouts was done in good faith and constituted no violation of law.

Your petitioner alleges that if the acts of petitioner in voting to pay Sawyer's salary and to enter into certain reimbursement agreements were in error, they did not violate Sections 1592 and 3071 of the Code, and were not grounds for suspension within the meaning of those sections and the Constitution of the State.

On information and belief that similar orders of suspension have been made by the respondent against nine other members of the Highway Commission and orders of dis-

missal filed against the other three Highway Commissioners, as a result of which the legality of the acts of your petitioner and the South Carolina Highway Commission have been brought into issue, and unless this order of suspension and similar orders against the other Commissioners are declared of no force and effect by this Court, irreparable damage will result to the State of South Carolina, and said orders will result as an unwarranted reflection upon the character of your petitioner, for which your petitioner has no adequate remedy at law.

The prayer of the petition is that the order of suspension be declared to be a nullity and of no force and effect: That a rule to show cause do issue requiring the respondent, as Governor of South Carolina, to show cause before this Court why the prayer of this petitioner should not be granted.

The rule to show cause was duly issued, and the return and demurrer thereto were duly heard on the 14th day of March, 1936.

The respondent submits his first formal pleading in the following language:

"The respondent in the above entitled actions, without submitting to the jurisdiction of this Court, or waiving any rights whatsoever in respect thereto, and appearing specially, solely and for no other purpose than that of questioning the and objecting to the jurisdiction of this Court, respectfully demurs to the petitions on the following grounds."

A summary of the grounds of demurrer follows:

(1) That it appears upon the face of the petitions that these actions are not brought to this Court by appeals in law or in equity, but are instituted in the original jurisdiction of this Court, which has no jurisdiction to entertain them, because its jurisdiction is conferred, defined, and limited by Section 4, Art. 5, Const. S. C. 1895, in the following terms:

"*Jurisdiction of Supreme Court.* The Supreme Court shall have power to issue writs or orders of injunction, *mandamus, quo warranto,* prohibition, *certiorari, habeas corpus*

and other original and remedial writs. And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law, except in chancery cases where the facts are settled by a jury and the verdict not set aside, and shall constitute a Court for the correction of errors at law under such regulations as the General Assembly may by law prescribe."

That these actions do not fall within these provisions of the Constitution.

(2) That it appears on the face of the petitions that these are suits against the State, which cannot be sued by its citizens without its consent, and it does not appear that such consent has been given.

(3) That there has been no summons or other process recognized or provided by law, conferring jurisdiction on this Court, of either the person of this respondent, the State of South Carolina, or of the subject-matter involved, served herein, and therefore this Court has no authority to proceed with said actions.

(4) That there is no authority by which an action can be commenced in the Courts of this State by the service of a rule to show cause, and the same is not original, therefore, but merely mesne process, and consequently the actions herein have not been commenced in contemplation of law, the rules to show cause herein being the only process served.

(5) That the foregoing grounds of demurrer raise federal questions under the due process of law clause of the Federal Constitution, namely, Section 1 of the Fourteenth Amendment to the Constitution of the United States, respondent being a natural born citizen of the United States, and South Carolina being a State of the Union, and for this Court to refuse to sustain this demurrer, or to proceed with the actions, or to render any order, decree, judgment, or other adjudication would be depriving respondent, and the State of South Carolina, of rights and property, in violation of the due process clause aforesaid.

The return contains the same saving provisions relating to the jurisdiction of this Court; and proceeds to set out as a part of the return the five grounds of the demurrer. In addition thereto, the respondent will avail himself of all rights allowed under Sections 463, 464, 465, and 466, Code 1932, which relate to the methods by which the jurisdiction of Courts may be challenged.

(6) An additional ground of demurrer was added in the general language that it appears upon the face of the petitions that facts sufficient to constitute a cause of action have not been alleged against the respondent, in his individual or representative capacity.

(7) The return admits Paragraph 1 of the petitions, but asserts that the petitioners are under suspension from office and are not performing the duties thereof and have no legal right to do so.

(8) Paragraph 2 of the petitions is admitted.

(9) Answering Paragraph 3 of the petitions, respondent alleges that under the proceedings therein mentioned petitioners were suspended from office lawfully and effectively with all of the hearing provided for under Sections 3070 and 3071 of the Code. That these Code provisions were enacted under the authority of Section 27, Article 3, of the Constitution of South Carolina 1895. That the only other sections of the Constitution relating to the removal of officers are Section 22, Art. 4, and Section 4, Art. 15.

(10) Paragraphs 5 and 6 of the petition are denied.

(11) That the petitioners come within the operation of the suspension statutes, viz., 1592, 3070, and 3071 of the Code. Therefore Paragraph 7 is denied.

(12) Answering Paragraph 8 of the petition on information and belief that Ben M. Sawyer was not entitled to the payment of the salary mentioned.

(13) Paragraphs 9 and 10 of the petitions are denied.

(14) Answering Paragraph 11 of the petitions, respondent admits issuance of suspension orders against all of the

petitioners herein and the suspension of three other Highway Commissioners, and, on information and belief, that all of said suspensions were in due form of law and valid, but the residue of the paragraph is denied.

(15) That this Court has no jurisdiction to entertain these actions, for that the actions being in form and substance against the State of South Carolina, the State has not consented to the bringing and maintenance of them; and for that no process has issued out of this Court, or from any other source, legally and effectively bringing the respondent either individually or in any representative capacity, or the State of South Carolina, or the subject-matter of these actions into or before the Court; and any order, decree, judgment, or other adjudication will be a deprivation of rights or property without due process of law in violation of Section 1, Fourteenth Amendment, Constitution of the United States.

(16) If the rules to show cause herein are held to be process, then respondent, individually and in his representative capacity, and the State of South Carolina will be denied the equal protection of the law in that the return dates permissible in such rules are arbitrary, variable in different cases at the pleasure of the authority issuing them in violation of Section 1, Fourteenth Amendment of the Constitution of the United States.

Paragraph 17 of the return is struck therefrom on motion of petitioner's counsel, on the ground that it seeks to set up grounds and causes for suspension of the petitioners which are not contained in the orders of suspension and upon which alleged grounds petitioners have not been heard.

It is proper that the Court first consider the demurrer to the petition.

The first ground of demurrer challenges the authority of the Court to entertain these proceedings in its original jurisdiction, because its original jurisdiction is "conferred, defined and limited by Section 4, Article 5 of

the Constitution of South Carolina of 1895." The applicable language of the cited article is as follows: "The Supreme Court shall have power to issue writs or orders of injunction, *mandamus, quo warranto,* prohibition, *certiorari, habeas corpus* and other original and remedial writs."

This very question was made and decided in the case of *Hearon v. Calus,* decided by this Court December 5, 1935, and reported in 178 S. C., 381, 183 S. E., 13, 20. In that case the Court said: "When his [the Governor] acts exceed the authority given him by the Constitution and Statutes and are injurious to the personal liberty and property rights of the citizens of the State, they are open to the inquiry and control of the judicial arm of the State. Any other construction of the law would lead to anarchy and revolution."

It is entirely consonant with logic and reason to hold that it was with the view of meeting such emergencies as now confront the Court that the framers of the Constitution embodied in Section 4, Art. 5, the embracing words, "and other original and remedial writs."

The second ground of demurrer is that it appears on the face of the petitions that they are strictly against the State of South Carolina, which cannot be sued without its consent, and it does not appear that consent has been given.

The assumption of this ground of demurrer is without foundation on which to stand. It appears on the face of the petition that it is a proceeding against the Governor of the State in his representative capacity. The title of the petition is, *"R. M. Dacus v. Olin D. Johnston, Governor of the State of South Carolina."* The text of the petition alleges that the proceeding is against the Governor as an officer of the State because he has exceeded the authority given him by statutory law, and has acted under an unconstitutional statute, thereby depriving the petitioner of his rights under the State and Federal Constitutions. If there is foundation

of fact and law for these allegations of the petition, it would be an anomalous condition of the law if there were not provision of the law to control and restrain the unlawful acts of an officer of the State. The officer is not the State.

In the case of *Hopkins v. Clemson Agricultural College,* 221 U. S., 636, 31 S. Ct., 654, 656, 55 L. Ed., 890, 35 L. R. A. (N. S.), 243, Mr. Justice Lamar, delivering the opinion of the United States Supreme Court, considering the constitutional immunity of a state from suit, said this: "But immunity from suit is a high attribute of sovereignty —a prerogative of the state itself—which cannot be availed of by public agents when sued for their own torts. The 11th Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. For how 'can these principles of individual liberty and right be maintained if, when violated, the judicial tribunals are forbidden to visit penalties upon individual defendants * * * whenever they interpose the shield of the State? * * * The whole frame and scheme of the political institutions of this country, State and Federal protest' against extending to any agent the sovereign's exemption from legal process." Citing *Poindexter v. Greenhow,* 114 U. S., 270, 291, 5 S. Ct., 903, 29 L. Ed., 185.

In the case of *State ex rel. Buchanan v. State Treasurer,* 68 S. C., 411, 47 S. E., 683, 686, the Court has laid down the rule by which to determine when a suit is against the State, in fact, although nominally against an officer of the State. The rule is thus stated and is taken from *Pennoyer v. McConnaughy,* 140 U. S., 1, 20, 11 S. Ct., 699, 35 L. Ed., 363: " 'Where the suit is brought against the officers of the State as representing the State's action and liability, thus making it, though not a party to the record, the real

party against which the judgment will so operate as to compel it to specifically perform its contracts,' it is, in effect, a suit against the State itself."

Manifestly the present case is not in accord with the rule thus stated. Here the petitioner proceeds against the Governor of the State for the alleged unlawful interpretation and application of a statute to the manifest hurt of petitioner. The petition seeks no judgment against the State.

"Where an officer of the State exceeds the authority conferred by law, or is proceeding under an unconstitutional law he may be liable to suit." Note to Beers, *Use of Platenius v. Arkansas,* 20 How., 527, 15 L. Ed., 991.

"A suit brought against certain state and county officers, to restrain them from assessing  *  *  *  property, is not in name or in effect a suit against a state." *Secor v. Singleton* (C. C.), 35 F., 376.

"When officers of the state act under invalid authority, or exceed or abuse their lawful authority, and thereby invade private rights that are secured by the Constitution, an action to redress injuries caused by the unauthorized act is not a suit against the state, since the acts of officials that are not legally authorized, or that exceed or abuse authority or discretion conferred upon them, are not acts of the State." *L. & N. R. R. Co. v. Railroad Com'rs,* 63 Fla., 491, 58 So., 543, 547, 44 L. R. A. (N. S.), 189.

It seems needless to follow this issue with further citations of authority. It is patent that this is not a suit against the State.

The third, fourth, and fifth grounds of demurrer may be considered together. They are to the effect that there has been no summons or other process recognized or provided by law, conferring jurisdiction on this Court of either the person of the respondent, the State of South Carolina, or of the subject-matter involved, served therein, and the Court is without authority to proceed with the actions.

In other words, the respondent assumes the correctness of his position that this Court has no power to proceed under the provisions of Section 4, Art. 5, Const. 1895, and that, therefore, the only method of procedure open to petitioner is by an action on the law side of the Court commenced by the service of summons as prescribed in Section 427, Code Civil Procedure 1932. These identical questions were made by respondent's counsel in this proceeding in the case of *Heyward v. Long,* filed December 5, 1935, and reported in 178 S. C., 351, 183 S. E., 145, 148. In that case, touching the issues on this point made by the demurrer in this case, the Court said:

"The respondents contend that these are civil actions, which should be commenced by the service of summons.

"Is a summons necessary?

"It is of course true that ordinarily a civil action under the Code should be commenced only by the service of a summons. The contention of the petitioners, however, is that they are before the Court now in a proceeding, and not in an action. Construing Section 565, Vol. 1 of the Code 1932, the Court in the case of *Walpole v. Wall,* 153 S. C., 106, 149 S. E., 760, held that it had power to issue writs of mandamus in its original jurisdiction, and such proceedings were not actions requiring summons for their commencement; that the proper procedure was to file a petition, upon which the Court or Justice would issue a rule to show cause.

"In *State v. Columbia Water Power Co.,* 82 S. C., 181, 63 S. E., 884, 22 L. R. A. (N. S.), 435, 129 Am. St. Rep., 876, 17 Ann. Cas., 343, the Attorney General filed a petition requiring the defendant to show cause why it should not be restrained. A rule to show cause was issued, to which the defendant made return. This was a proceeding in the original jurisdiction of the Court, and was in accord with the procedure followed in *Walpole v. Wall, supra,* respecting writs of mandamus.

"In the case of *Burnett v. Langston,* 164 S. C., 99, 162

S. E., 72, 73, which was likewise a proceeding in the original jurisdiction of the Supreme Court on a verified petition, a rule to show cause was issued requiring respondent to deliver to the petitioner all books, etc., in his possession relating to the office of tax collector of Spartanburg county. It was contended that this was an action which should have been commenced by a summons. The Court held: 'As to the legal positions with reference to the jurisdiction of this court, there are numerous cases which show that these contentions are untenable. This court in its original jurisdiction may issue a rule to show cause without a summons, without the leave of a circuit judge, and upon a petition such as in this case,' citing *Verner v. Seibels*, 60 S. C., 572, 39 S. E., 274; *Carrison v. Young*, 125 S. C., 42, 118 S. E., 32; *Walpole v. Wall, supra.*

"Even if it were conceded that a summons is necessary, the rule to show cause, together with the petition or complaint, fully serves the purpose of a summons. This is settled by the case of *State ex rel. Wolfe v. Sanders*, 118 S. C., 498, 110 S. E., 808, 810. In disposing of the question, the court uses this language: 'The purpose of the summons is to acquire jurisdiction of the person of the defendant and to give him notice of the action and an opportunity to appear and defend. While Code Civ. Proc. § 178 *et seq.*, prescribes the requisites of the summons, it does not provide that it shall be in any particular form. And when we consider the purpose of the summons, in the light of the proceedings, had in this case, particularly the provisions contained in the order of the Chief Justice and the allegations of the petition or complaint, and the prayer thereof, it is clear that the objection of defendant is purely and highly technical, and that to sustain it would be to sacrifice substance to form, because the order and the petition together contained substantially every requisite of a summons prescribed by the Code, and defendant was neither misled nor prejudiced in the slightest by the failure to serve him with

a summons in due and regular form. While, as said, the service of a summons is the manner prescribed by the Code, and the usual means of acquiring jurisdiction of the person of the defendant, and therefore it ought to be observed in practice, as ought all other rules prescribed for an orderly system of procedure, nevertheless, it is well understood by the profession, and it has frequently been held by the courts, that it is not the only method by which jurisdiction of the defendant may be acquired.'

"See *Lyles v. Haskell*, 35 S. C., 391, 14 S. E., 829; *Clary v. Harvey*, 176 S. C., 512, 180 S. E., 673.

"We hold that no summons was necessary in these proceedings."

The demurrer is without merit and is dismissed.

We come to the consideration of the questions made by the petition and the answer. Briefly stated they are these:

1. Is Section 1592, Code 1932, in conflict with Section 22, Art. 4, State Const. 1895?

2. If it is constitutional, does it give the Governor power to suspend an officer without a hearing?

3. If it gives him such power, is it in conflict with Section 5, Art. 1, Const. 1895, and Fourteenth Amendment to Federal Constitution?

4. Is a Highway Commissioner such officer, clerk, or person as is covered by the provisions of Section 1592, Code 1932?

5. Does the action of petitioner, as a member of the State Highway Commission, in voting to pay the salary of Ben M. Sawyer as Chief Highway Commissioner, constitute a violation of the provisions of Section 1592?

6. Was the action of the State Highway Commission in voting to enter into reimbursement agreements with several counties of the State a violation of Section 1592?

7. Do these two actions by the State Highway Commission justify their removal by the Governor under Section 1592?

It appears from the order of suspension set out in the record that the Governor purports to proceed under the provisions of Sections 1592, 3070, and 3071, Code 1932.

In codifying the statutes, the Code Commission seems to have divided Section 1592 into two parts and inserted them in the Code of 1932 as Sections 3070 and 3071. For ready reference, we reproduced Section 1592 here: "It shall be unlawful for any officer, clerk, or other person charged with disbursements of funds appropriated by the Legislature of South Carolina, either county funds or State funds, to exceed the amounts and purposes stated in said appropriations, or to change or shift appropriations from one item to another: *Provided,* That transfers may be authorized by the General Assembly in any county supply Act or the annual appropriation Act for the State. Any officer, clerk, or other person violating the provisions of this section shall be deemed guilty of malfeasance in office, and the Governor may, upon his attention being brought to same, at once suspend said officer and shall investigate the conduct of same, and, if found guilty, he shall be suspended by the Governor, and in addition to such suspension, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined or imprisoned within the discretion of the court."

Section 3070 sets forth the offenses prohibited, and Section 3071 sets forth the penalty. These things are included in Section 1592. We need, therefore, only refer to Section 1592.

It is patent that the Governor holds that Section 1592 gives him power to suspend *any officer* "charged with disbursements of funds appropriated by the Legislature" under certain circumstances without hearing. Now Section 22 of Article 4 of the State Constitution of 1895 provides: "Whenever it shall be brought to the notice of the Governor by affidavit that any officer who has the custody of public, or trust funds is probably guilty of embezzlement or the appropriation of public or trust funds to private use, then the

Governor shall direct his immediate prosecution by the proper officers, and upon true bill found the Governor shall suspend such officer and appoint one in his stead, until he shall have been acquitted by the verdict of a jury. In case of conviction the office shall be declared vacant and the vacancy filled as may be provided by law."

There can be no question that the "funds appropriated by the Legislature" spoken of in Section 1592 are within the definition of "public or trust funds" spoken of in Section 22, Article 4, of the Constitution.

The constitutional provision above quoted expressly provides that where it is brought to the attention of the Governor by affidavit that one who has the custody of such public or trust funds is probably guilty of embezzlement the Governor shall direct his immediate prosecution, *"and upon true bill found the Governor shall suspend such officer,"* etc. (Italics added.) This section of the Constitution has in several cases been construed by our Court. In the case of *McMillan v. Bullock,* 53 S. C., 161, 173, 31 S. E., 860, 864, it appears that Bullock, Clerk of the Court for Abbeville County, was charged with forgery, and true bill found. He was thereupon suspended from office and McMillan appointed in his stead, pending his trial. On the appeal this Court said: "The section of the constitution of 1895 controlling the method by which the governor of this state may suspend an officer * * * prescribes three requisites: (1) That the officer to be removed must be an officer who has the custody of trust or public funds. (2) He must be probably guilty of the crime of embezzlement or the appropriation to his own use of public or trust funds. (3) There must be a true bill on the charge of embezzlement against the officer to be removed."

Of especial and convincing application is the case of *State v. Hough,* 103 S. C., 87, 87 S. E., 436.

Huckabee, Sheriff of Kershaw County, was suspended, after hearing, by the Governor, and Hough appointed in his

stead. Action was brought to test the legality of Huckabee's suspension, as well as Hough's right to perform the duties of the office. Mr. Justice Hydrick, delivering the opinion of this Court, said: "The action of the Governor was based on section 841 of the Criminal Code, which reads: 'Any constable, deputy constable, sheriff or magistrate who shall neglect or refuse to perform the duties required by this chapter, shall be subject to suspension by the Governor.' Petitioner contends that, in so far as this section confers upon the Governor power to suspend a sheriff, it is unconstitutional."

The opinion recites the provisions of Section 22, Art. 4, Constitution 1895 (hereinabove recited), and then proceeds in this wise:

"This is the only general provision in the Constitution which confers upon the Governor the power of suspending officers. It will be noted that it is hedged about with much greater restrictions than the power of removal, both as to the number and nature of the offenses and as to the circumstances and conditions under which the power may be exercised. Having entered upon that realm, the naming of one offense, and specifying the circumstances and conditions under which the Governor may suspend officers for that offense, clearly negatives the idea that it was intended that he should exercise the power upon any constitutional officer for any other offense or under any other circumstances, unless otherwise provided in the Constitution or a statute enacted under the power to provide the manner of removal as hereinbefore indicated. The maxim *'Expressio unius est exclusio alterius'* applies in such cases. In *McMillan v. Bullock,* 53 S. C., 161, 31 S. E., 860, in construing this same provision of the Constitution, the court said: 'It need not be enlarged upon that, when the Constitution of the state provides a plan for getting rid of an unworthy officer, that plan supersedes all others for that purpose; and not only so, but the requirements of the Constitution must be strictly

complied with. Whenever the Constitution provides that one certain criminal offense shall be held to forfeit an office, it is tantamount to the declaration that no other offense or crime shall fall within the remedy prescribed in the section of the Constitution under consideration.' Upon reason and authority, therefore, we are obliged to conclude that the Legislature was without power to authorize the indefinite suspension of a sheriff for neglect of official duty, and that, in so far as section 841, *supra,* relates to that office, it is void, and affords no authority for the suspension of the petitioner. * * *

"In *McDowell v. Burnett,* the difference between suspension and removal of officers was pointed out: 'One is the mere temporary withdrawal of the power to exercise the duties of an office; the other is a complete and final deprivation of official tenure.' In that case, and also in *State v. Rhame,* it was held that the conferring of the power of suspension impliedly denies the power of removal. The two things are essentially different, and are attended by different consequences, both to the officer and to the public. Removal creates a vacancy in the office, which may be filled at once in the manner prescribed by law; suspension creates no vacancy, and where there is no provision of law for some other to perform the duties of the office by temporary appointment, or otherwise, we would have an office and an officer, but no one to discharge the duties of the office, to the great inconvenience of the public for whose benefit the office was created. Hence the reason is apparent why the framers of the Constitution placed greater limitations and restrictions upon the power of suspension than they did upon the power of removal, and why, in the general grant of the power of suspension and also, in the special cases in which it is allowed, they made suitable provision for the performance of the duties of the office by some other officer, or by a temporary appointee, during the suspension."

Section 1592, as applied by the Governor, grants to him the power of indefinite suspension of officers, and without hearing. A thing palpably unconstitutional as shown above. The section contains anomalous and contradictory provisions for two suspensions; one before investigation and one after investigation, if found guilty by the Governor. And, in addition to being suspended, shall he be tried and if convicted be fined or imprisoned at the discretion of the Court. No provision is made in this section for filling the vacancy created by the indefinite suspension by the Governor.

It must be patent that the Legislature never intended to place in the Governor such absolute and arbitrary power; it would be against public policy, and in the teeth of the manifest principles of the Constitution of the State.

In an able and exhaustive opinion of the late Mr. Justice Woods in the case of *McDowell v. Burnett,* 92 S. C., 469, 75 S. E., 873, 878, this is found: "Further, the Constitution itself negatives the claim that the Governor has unlimited power of removal of officers whose terms are fixed by law."

If this be accepted law, as it must be, it follows as a necessary corollary that the Governor cannot exercise the power of arbitrary and indefinite suspension and by this means effect the removal of an officer.

Where there are conflicting provisions of a statute, that one which is in consonance with justice and reason should be adopted. The authorities to this end are many. It was so held in *Ham v. McClaws,* 1 Bay, 93, and consistently since.

This Court will not commit itself to the opinion that the Legislature ever intended to invest the Governor with power to suspend an officer and convict him upon his *ex parte* investigation and then suspend him indefinitely.

If Section 1592 is open to the construction given it by the Governor and upon which he has acted in the suspension of the petitioner, then it is in violation of Section 5, Article 1,

of the Constitution of the State, and of Section 1, Amendment 14 of the Constitution of the United States, which declare that no citizen shall be deprived of life, liberty, or property without due process of law, nor shall any person be deprived of the equal protection of the law.

Black's Law Dictionary (3d Ed.), p. 626, defines the phrase "due process of law," as follows: "Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Citing Cooley's Const. Limitations, p. 441.

In the case of *Simmons v. Tel. Co.*, 63 S. C., 425, 41 S. E., 521, 522, 57 L. R. A., 607, Mr. Justice Jones for the Court gave this definition of the phrase: " 'Due process of law' means the same as 'the law of the land,' and, as a general rule, involves an opportunity before a proper tribunal under established procedure to make contest in defending or enforcing a legal right." Citing from the opinions of the United States Supreme Court the following cases: *Den ex dem Murray v. Hoboken, Etc., Co.*, 18 How., 272, 15 L. Ed., 372, 376; *Pennoyer v. Neff*, 95 U. S. (5 Otto), 714, 24 L. Ed., 565, 572. See, also, *State v. Rector*, 158 S. C., 212, 155 S. E., 385; *Holden v. Hardey*, 169 U. S., 366, 18 S. Ct., 383, 42 L. Ed., 780.

The order of suspension issued by the Governor expressly declares that he has suspended the petitioner for acts done in violation of Sections 1592 and 3070 of the Code. There is no pretense that it is done in pursuance of facts ascertained after an investigation at which petitioner was present and was heard, or had the opportunity to be heard, in his defense. The order is in itself a bald assertion of the Governor's power under the quoted statute to summarily suspend the officer, indefinitely and without a hearing.

If this interpretation of the statute be correct, then it is beyond cavil in violation of Section 5, Art. 1, Const. of S. C., and Section 1, Amendment 14 of the Constitution of the United States, because it denies to petitioner due process of law, and deprives him of the equal protection of the law.

Aside from these criticisms of the constitutionality of the statutes under which the Governor immediately acted in issuing his order of suspension of the petitioner, there are other and potential reasons why the order of suspension cannot be sustained.

Section 1592 makes it a misdemeanor for any person charged with the disbursement of funds appropriated by the Legislature of South Carolina to exceed the amounts and purposes stated in said appropriations, or shift appropriations from one item to another. "Any officer, clerk, or other person violating the provisions of this section shall be deemed guilty of malfeasance in office," etc.

In order that one accused under this section shall be found guilty, the essential requisite is that such "officer, clerk, or other person" must be "charged with disbursements of funds appropriated by the Legislature."

This section has no application to the individual members of the Highway Commission. They do not disburse the funds of the Highway Commission appropriated by the Legislature, but they are disbursed and paid by the State Treasurer upon the warrant of the Comptroller General, and can be paid in no other way.

The two sources of income from which the State Highway Commission derives the funds upon which it operates are, first, the gasoline tax, which is collected by the South Carolina Tax Commission, and deposited by it with the State Treasurer; the motor vehicle license fees, which are collected by the Highway Commission and deposited with the State Treasurer.

The State Highway Commission can get funds for its operation in one way only. It must file with the Comptroller General a claim for the sum or sums it needs, in the manner prescribed by law; if the Comptroller General approves the claim, he will issue his warrant to the State Treasurer authorizing and directing its payment. If there has been an appropriation of the necessary funds, the State Treasurer pays the warrant.

The State Highway Commission does not disburse any of these funds.

If it should be held that Highway Commissioners do disburse funds (which is not done), nevertheless the payment of the salary of Ben Sawyer cannot be held to be a violation of Section 1592 of the Code. The payment of the salary was simply an administrative act of the Highway Commission which was amply and explicitly provided for by law.

Section 5868, Code 1932, authorizes and directs the State Highway Commission to appoint a Chief Highway Commissioner who shall be its "administrative and executive head." His term of office "shall be four years"; his salary "shall be fixed by the Highway Commission which shall not exceed $6,000.00 per annum."

Section 5969 of the Code of 1932 is of such pertinence and applicability it may well be quoted in its entirety:

"From and after the approval of this chapter by the Governor, the entire amount of the revenues derived from the gasoline tax and the motor vehicle license tax, except such portion, if any, of the gasoline tax as shall exceed the amount of a gasoline tax levied at the rate of five cents per gallon, shall be turned over to or held by the State Highway Department, and paid out as provided in this section. Not more than thirty days prior to the beginning of each calendar year the State Highway Commission shall make an estimate of the revenues to be received by the State Highway Department during said calendar year from said gasoline tax and motor vehicle license tax and shall also estimate

the amounts required for the following purposes respectively, which estimated amounts are hereby appropriated for said purposes, respectively, viz.:

"(a) The amount required for the payment of the expenses of the State Highway Department for said calendar year, including all expenses for administration, operation, collection of revenues and payment of accident claims. The amount estimated for these purposes shall not exceed Four Hundred and Fifty Thousand ($450,000.00) Dollars annually.

"(b) The amount necessary in order to make the payments required by this chapter to be made to or on behalf of counties, highway districts and bridge districts during said calendar year or during the first fifteen days of the next succeeding year;

"(c) The amount necessary in order to pay the principal and interest falling due in said calendar year or during the first fifteen days of the next succeeding year on certificates of indebtedness issued under this chapter;

"(d) The amount necessary to make the annual sinking fund payment required by this chapter to be made in said calendar year.

"From the remainder of said estimated revenues, of said calendar year there is hereby appropriated a sum sufficient to maintain the highways of the State highway system for said year in a sound and serviceable condition. Any surplus of said estimated revenues for such calendar year (including any unpaid balances of the maximum amount hereinabove provided for the expenses of the State highway department), is hereby appropriated for the construction, reconstruction and maintenance of State highways and for the payment of other expenses of the State highway department."

In pursuance of the provisions of the Act, the State Highway Commission in December, 1934, made the estimate required by the Act. It will be observed that the section pro-

vides that the amounts thus estimated "are hereby appropriated for said purposes, respectively." It does not appear that it is contended that the salary of the Chief Highway Commissioner is not a part of the expenses of administration of the Highway Commission.

It appears from the order of suspension that the gravamen of the offense charged against the Highway Commission in regard to the Chief Highway Commissioner's salary is that there was no appropriation of the amount of such salary contained in any annual appropriation, and that, therefore, the amount so paid by the Highway Commission "exceeded the amounts and purposes stated in any appropriation, and effecting a change and shifting of appropriations from one item to another without being authorized by the General Assembly in any county, or annual appropriation Act for the State."

It is a matter of legislative and executive record that the Annual Appropriation Act of 1935 contained an item providing for the payment of the salary of Ben M. Sawyer as Chief Highway Commissioner, and that it was vetoed by the Governor. This question has been judicially considered and determined in a number of cases. As is seen, Section 5969 provides that when the State Highway Commission has made the annual estimate required by its terms, such "amounts are hereby appropriated for said purposes, respectively." This is a permanent Act embodied in the Code of 1932. It is a self-operating provision. It does not need to be repeated annually. It is of force until it is repealed. It is a continuing appropriation.

In the case of *Grimball v. Beattie,* 174 S. C., 422, 177 S. E., 668, 672, the Court said: "An appropriation may also be made by a permanent continuing statute." Citing *State ex rel. Buchanan v. State Treas.,* 68 S. C., 411, 47 S. E., 683, and many others.

From the same case: "The only limitation in our State Constitution is that money shall be drawn from the treasury

only in pursuance of appropriations made by law. Section 9, Art. 10, State Constitution."

Here in Section 5969 is the express authority of law to pay the amount estimated to be necessary each year to meet the administration expenses of the State Highway Commission, which includes the salary of the Chief Highway Commissioner; it is fixed by a continuing appropriation.

Again from the *Grimball case:* "It will be seen that the Constitution prohibits any money being paid out of the state treasury except in pursuance of an appropriation made by law. It is significant that the framers of our Constitution did not require that appropriations be made by an annual appropriation act. The provisions of the Constitution do not require any arbitrary form of expression or particular words in making an appropriation. No particular expression or set of words are requisite or necessary to carry out the provisions of the Constitution. The only limitation is that the appropriations must be made by law. The object of the constitutional provision prohibiting the payment of money from the state treasury except by appropriations made by law is to prohibit expenditures of the public funds at the mere will and caprice of those having the funds in custody without legislative sanction therefor."

In the case of *Briggs v. Greenville County*, 137 S.. C., 288, 135 S. E., 153, 156, Mr. Justice Cothran said:

"Are the provisions of the Pay-As-You-Go Act which appropriate the funds out of which reimbursements are to be made under said reimbursement agreements in conflict with section 2 of article 10 of the Constitution of South Carolina, in that they appropriate money for more than one year?

"The power of the Legislature over the matter of appropriations is plenary, except as restricted by the Constitution. 36 Cyc., 891. In the absence of a constitutional prohibition, the Legislature may make continuing appropriations; that is, those the payment of which is to be continued be-

yond the term or session of the Legislature by which they are made. 36 Cyc., 893, 894; *In re.* Continuing Appropriations, 18 Colo., 192, 32 P., 272; *Callaghan v. Boyce,* 17 Ariz., 433, 153 P., 773; *Fleckten v. Lamberton,* 69 Minn., 187, 72 N. W., 65; *People v. Pacheco,* 27 Cal., 175; *Jeffreys. v. Huston,* 23 Idaho, 372, 129 P., 1065."

The case of *In re. Continuing Appropriations,* 18 Colo., 192, 32 P., 272, cited above, fully discusses this doctrine and approves it.

In the case of *State v. Moorer,* 152 S. C., 455, 150 S. E., 269, 279, Mr. Justice Stabler, now Chief Justice, said: "It is also contended that the act is invalid as it undertakes to provide an appropriation of the proceeds of the gasoline tax and motor vehicle license fees for an indefinite number of years, in violation of section 2 of article 10 of the Constitution. Under our form of government the Legislature is given plenary power in the matter of taxation, subject, of course, to express constitutional limitation. See Cooley's Constitutional Limitations (8th Ed.), p. 986 *et seq.* It has been held by this court that with regard to appropriations the same extensive power exists, subject in like manner to constitutional limitations.   *   *   *

"As the appropriations contemplated by the act under consideration relate to a 'certain special fund,' the gasoline tax and the motor vehicle license tax, the present case is clearly brought within the rule declared in the *Briggs case,* which settles the question adversely to the contention of the petitioners."

Unquestionably the Act which authorized the Highway Commission to appoint a Chief Highway Commissioner fixed the manner of the payment of his salary by a continuing appropriation. The Commissioners were, then, wholly within the law when they voted for the payment of which the order of suspension complains. It is safe to say that if there had been no appropriation authorizing the payment of this salary, the watchful Comptroller General would not have issued the warrant for its payment, and the vigilant

State Treasurer would not have paid it, and the able Attorney General would not have advised them that it was lawful for them so to act.

If it were conceded that the Governor had power ■ under the statutes upon which he relies to suspend the Highway Commissioners, which power is not admitted, it is patent that the act of voting for the payment of the salary furnishes no legal ground for the exercise of such power.

The other ground of suspension stated in the order served on the petitioner is that relating to the action of the Highway Commissioners in and about reimbursement agreements with certain counties. Here is the language of the order thereabout: "It also appearing that you are charged by law with the disbursement of State funds appropriated by the Legislature of South Carolina, and it having been brought to my attention that you entered into certain reimbursement agreements, and passed a resolution authorizing and empowering you to enter into other reimbursement agreements, with any county, in violation of Section 2510, 1932 Code of South Carolina, and against the provisions of the said statute made and provided, thereby exceeding the amounts and purposes stated in any appropriation, and effecting a change and shifting of appropriations from one item to another, without being authorized by the General Assembly in any county or Annual Appropriation Act for the State, all of which appears from the 'Minutes of the State Highway Commission Meeting of October 9, 1935,' now on file in the office of the South Carolina State Highway Commission, in Columbia, South Carolina."

It is to be noted that the order does not enter into ■ any particular statement of facts to show the alleged illegal conduct of the Highway Commissioners. Reduced to its last analysis, the ground upon which the suspension for this cause is placed is that the Highway Commission, including the petitioner, have entered into certain reimbursement agreements and intend to enter into other

such agreements. It is true that the order of suspension asserts that this action of the Commission is in violation of the provisions of Section 2510, Code 1932, but not even a suggestion is made of any single particular of which such violation consists. Nor does the brief and argument of respondent's counsel furnish such information. The rational deduction from the language of the order is that the offense of the commission consists in making these reimbursement agreements, with certain counties, a policy which does not meet the approval of the Governor. It is not the province of this Court to consider the wisdom, or lack of wisdom, of the reimbursement law; that is a matter for the consideration and determination of the Legislature. This Court may inquire only whether there is lawful authority for the acts of the Highway Commissioners, for which the Governor assumes power to suspend them.

It would be a work of supererogation to rehearse the history of the enactment of the various laws by the Legislature, which have found their culmination in Sections 2510, 5931 to and including Section 5946, Code 1932. Inspection of these sections of the Code discloses that the State Highway Commission has full authority in law to enter into reimbursement agreements with the several counties.

"§ 2510. *Reimbursement Agreements.*—The State Highway Commission and each county in this State are hereby authorized to enter into a reimbursement agreement or agreements, and each county is hereby authorized to issue its bonds for the purpose of raising moneys," etc.

"§ 5931. * * * The State Highway Commission is hereby authorized to permit any county or counties to construct any of the roads and bridges designated in section 5926 and to make an agreement with the road officials of any such county or counties to reimburse and repay said county or counties in the same manner as is provided by section 5928."

"§ 5939. No bonds shall be issued under this article by any county unless and until the proper officer or body of

such county shall have previously entered into an agreement or agreements on behalf of such county with the State Highway Commission of South Carolina, whereby the State Highway Commission shall have agreed to reimburse and repay said county for the cost of constructing the highway or highways for which such bonds are to be issued as provided in section 5931."

It is needless to cite other provisions of the Acts, as embodied in the Code, relating to reimbursement agreements. It is manifestly beyond contention that the Highway Commission is fully clothed with lawful authority to enter into reimbursement agreements with the counties of the State. The charge that in making such agreements the State Highway Commission being "charged with disbursing funds appropriated by the Legislature of South Carolina, have exceeded the amounts and purposes named in any appropriation, and effected a change and shifting of appropriations from one item to another, without being authorized by the General Assembly, in any county or Annual Appropriation Act of the State" falls to the ground.

If we concede—which, of course, is not done—that the Highway Commission had no authority to enter into reimbursement agreements, still there would be no ground given for the suspension of the members of the Highway Commission under the provisions of Section 1592; they are not charged with the disbursement of funds appropriated by the Legislature, nor is it within the scope of logic and reason to construe such reimbursement agreements as the vehicle by which to "exceed the amounts and purposes stated in said appropriations, or to change or shift appropriations from one item to another."

For the reasons hereinabove given, the conclusion is inevitable that the orders of suspension issued by the respondent in these actions are without authority of law to sustain them. They are null, void, and of no effect.

Such is the judgment of this Court.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker and Fishburne concur.