536 S.E.2d 870

The STATE, Appellant,

v.

Frank Gary COOPER, Respondent.

In Re In the Matter of the Care and Treatment of Frank Gary Cooper.

No. 25192.

Supreme Court of South Carolina.

Submitted April 19, 2000.

Decided Sept. 5, 2000.

Rehearing Denied Oct. 6, 2000.

390

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Deputy Attorney General Treva G. Ashworth, Assistant Deputy Attorney General J. Emory Smith, Jr., and Assistant Deputy Attorney General Salley W. Elliott, all of Columbia, for appellant.

Raymond E. Mackay, of Anderson, for respondent.

TOAL, Chief Justice:

The State appealed an order requiring it to pay fees incurred to hire an expert to examine Frank Gary Cooper ("Cooper") in conjunction with a trial pursuant to the Sexually Violent Predator Act, S.C.Code Ann. §§ 44–48–10 to –170 (Supp.1999). The State simultaneously filed a Petition for a Writ of Supersedeas or for Clarification in the Court of Appeals and a Petition for an Extraordinary Writ with this Court, which was denied as moot. This Court certified this case for review pursuant to Rule 204(b), SCACR, and, pending the disposition of the merits of the appeal, stayed the portion of the order on appeal that directed the Attorney General's office to pay the expert's fee within ten days of the order.

## FACTUAL/PROCEDURAL BACKGROUND

The State initiated an involuntary civil commitment process for the long-term control, care, and treatment of Cooper as a sexually violent predator pursuant to S.C.Code Ann. § 44–48–10 (Supp.1999). On August 5, 1991, Cooper was convicted in Anderson County for Criminal Sexual Conduct with a Minor, Second Degree, and sentenced to a term of imprisonment for fifteen years. Cooper has previous convictions from Tennessee for Rape and Assault and Battery with Intent to Fondle a Female Under 12 years of age.

On October 22, 1998, a probable cause hearing was held to determine whether there was enough evidence to find Cooper was a sexually violent predator. At the hearing, the trial judge found that probable cause had been established and required Cooper to submit to a psychiatric evaluation. Cooper's attorney requested funding for an independent psychiatric examination. The attorneys and the trial judge noted that S.C.Code Ann. § 44–48–90 (Supp.1999) did not specify the entity responsible for paying the fee. The trial court found that Cooper was entitled to an independent examination by an expert and ruled that the Office of Indigent Defense should pay the expert's fee. The trial judge further ordered, without objection, that if funds were unavailable from the Office of Indigent Defense, the fee would be paid by the Attorney General's office.[1] The trial court also directed that compensation for Cooper's expert would be subject to approval by the court.

---

1. The provision of the Sexually Violent Predator Act concerning expert witness fees states:

In the case of an indigent person who would like an expert of his own choosing, the court shall determine whether the services are necessary. If the court determines that the services are necessary and the expert's requested compensation for the services is reasonable, the court shall assist the person in obtaining the expert to perform an examination or participate in the trial on the person's behalf. The court shall approve payment for the services upon the filing of a certified claim for compensation supported by a written statement specifying the time expended, services rendered, expenses incurred on behalf of the person, and compensation received in the case or for the same services from any other source.

S.C.Code Ann. § 44–48–90 (Supp.1999).

On February 2, 1999, the trial court approved the expenditure of $1,500.00 for the retention of Cooper's expert psychiatrist, Dr. Helen Marie Clark. The trial court further found that Cooper was incarcerated and indigent and in need of funds to properly prepare his defense. However, the Order was silent as to the funding source. On February 12, 1999, the Attorney General's office sent a letter claiming the office had no money to pay the expert fees and should not be ordered to pay. On April 29, 1999, the Office of Indigent Defense sent a letter to Cooper's attorney indicating that the Sexually Violent Predator Act makes no one responsible for the payment of expert fees. According to the Office of Indigent Defense, no money had been appropriated for the payment of these services and the funds that were available were restricted to the payment of trial expenses in criminal matters or in Post–Conviction Relief cases. The Office of Indigent Defense claimed that it could not voluntarily use its resources to pay for the expenses because it was currently facing a severe financial crisis.

On March 3, 1999, a bench trial was held and the trial judge found Cooper was a sexually violent predator, and he was committed for treatment. The trial judge found that Cooper's social and psycho-sexual history, his poor prognosis for successful treatment due to his unwillingness or inability to recognize the extent of his illness, and his prior convictions for sexually violent offenses prove beyond a reasonable doubt that Cooper suffers from a mental abnormality that makes him likely to engage in acts of sexual violence if not confined in a secured facility for long-term control, care, and treatment. The Order did not address Cooper's expert fees.

On May 7, 1999, the State filed a Rule 60(b), SCRCP, motion asserting that the earlier orders of the court regarding payment of expert fees by the Attorney General's office were void, or in the alternative, asking the trial judge to hold that they were no longer equitable under Rule 60(b)(5). On June 10, 1999, the trial judge denied the post-trial motions and directed the Attorney General's office to pay the $1,500.00 expert fee within ten days of the Order. On June 17, 1999, the State filed a Notice of Appeal in the Court of Appeals appealing the portion of the orders requiring the Attorney General's office to pay the expert fees. The State's Notice of

Intent to Appeal references only the Rule 60(b) Order and the November 1998 and February 1999 Orders. The State also moved in the circuit court for a stay pending the appeal in the event the appeal did not automatically stay the Order to pay the fee. The circuit court denied the motion to stay. Also on June 17, 1999, the State filed a Petition for a Writ of Supersedeas in the Court of Appeals requesting a stay in the event the Notice of Appeal did not automatically stay the portions of the orders on appeal. On June 18, 1999, the Court of Appeals issued a stay which was subsequently dissolved on June 30, 1999.

On June 17, 1999, the State filed a Petition for Extraordinary Relief and Memorandum in this Court. The State notified this Court that the stay issued by the Court of Appeals had been dissolved and requested that this Court hear the appeal and stay the orders on appeal, if the Orders were not automatically stayed. This Court certified the case for review and stayed the portion of the Order on appeal that directed the Attorney General's office to pay the expert's fee. The following issues have been certified for review:

(1) Is the State's appeal timely and, therefore, properly before this Court?

(2) Does the Court of Appeals have authority to decide a dispute as to whether an exception to the automatic stay contained in Rule 225, SCACR applies?

(3) Does the exception to the automatic stay contained in S.C.Code Ann. § 18–9–130 (1985) apply in this case?

(4) Does the circuit court have the authority to order the Attorney General to pay the expenses of the expert?

(5) Does S.C.Code Ann. § 44–48–90 (Supp.1999) constitute a continuing appropriation that authorizes the State to pay expert witness fees for indigents from the General Fund?

(6) Does Act No. 100, 1999 S.C. Acts 355 authorize payment of expert witness fees by the Office of Indigent Defense?

(7) Are any other sources of state funding available to pay expert witness fees including, but not limited to, appropriations to the Judicial Department for Judicial Commitment or appropriations to the Department of Mental Health for the Sexually Violent Predators Act?

LAW/ANALYSIS

## I. Timeliness of the Appeal

The State argues its appeal was timely and, therefore, properly before this Court from final judgment entered on June 10, 1999. We agree.

██ The appeal in this case was timely because the judgment on appeal was not final and appealable until after the issuance of the June 10, 1999 Order. Pursuant to S.C.Code Ann. § 14-3-330 (1976), only final judgments and limited interlocutory orders are appealable.[2] The funding issue was merely hypothetical and not ripe for appeal before the cause of action was concluded, the fee was approved by the trial court, and the request for payment was denied by the Office of Indigent Defense. The issue did not become ripe for appeal until the trial judge ordered the Attorney General to pay the expert fees on June 10, 1999. *See Baber v. Greenville County*, 327 S.C. 31, 488 S.E.2d 314 (1997) (this Court generally declines to pronounce a declaration wherein the rights of a party are contingent upon the happening of some event which cannot be forecast and which may never take place).

██ On June 17, 1999, the State filed: (1) a Notice of Appeal in the Court of Appeals;[3] (2) a Motion to Stay Orders Pending Appeal in the trial court; (3) a Petition for Writ of Supersedeas or for Clarification in the Court of Appeals; and (4) a Petition for an Extraordinary Writ in this Court. The State filed its Notice of Appeal within thirty days of the order disposing of Cooper's Rule 59, SCRCP motion. When either party files a timely Rule 59, SCRCP motion, the time to appeal for all parties is stayed until the motion in resolved.

---

2. The trial court's orders do not fall into the category of limited interlocutory orders that are directly appealable, either as orders which involve the merits of the case or which affect a substantial right. The orders did not determine any issues in the case, affect the mode of trial, or prevent a judgment from being rendered. *See Mid–State Distrib., Inc. v. Century Importers, Inc.*, 310 S.C. 330, 426 S.E.2d 777 (1993).

3. The State's failure to list the March final judgment in its Notice of Appeal does not preclude our review of the November 1998 and February 1999 orders, and of the Rule 60(b) order. *See, e.g., Lancaster v. Fielder*, 305 S.C. 418, 409 S.E.2d 375 (1991) (in timely appeal after final order, party can challenge intermediate orders).

Rule 203(b)(1), SCACR; Rule 59(f), SCRCP. The State, therefore, filed the appropriate motions and acted in a timely manner to appeal the June 10, 1999 Order directing it to pay the expert fees.

## II. Court of Appeals' Authority

■ The State argues that the Court of Appeals has authority to decide whether an exception to the automatic stay contained in Rule 225, SCACR is applicable. We agree.

The General Assembly's recent amendments to the South Carolina Code, effective June 1, 1999, expanded the jurisdiction of the Court of Appeals and provided for filing of cases directly in the Court of Appeals rather than the Supreme Court. Included in those amendments was section 14–8–200, which states:

> The [Court of Appeals] shall have the same authority to issue writs of supersedeas, *grant stays*, and grant petitions for bail as the Supreme Court would have in a similar case.

S.C.Code Ann. § 14–8–200 (Supp.1999) (emphasis added). These recent amendments provided the Court of Appeals with jurisdiction over the appeal and, therefore, the authority to decide whether the automatic stay rule contained in Rule 225, SCACR was applicable to the instant case.

■ In *Kearney v. Allen*, 287 S.C. 324, 338 S.E.2d 335 (1985), we held that when there is a dispute as to whether an automatic stay exists under our rule,[4] "authority to resolve such a dispute is vested in the Supreme Court." When *Kearney* was decided, our appellate procedural rules provided that appeals were filed and finalized in the Supreme Court, then transferred to the Court of Appeals. Since disagreements over the meaning of the rules almost always arose while jurisdiction over the appeal was vested in the Supreme Court, it was sensible that the Supreme Court resolve the disputes. Under our current procedure, the vast majority of appeals are filed, processed, and decided by the Court of Appeals. We, therefore, modify *Kearney* and hold the Court of Appeals has the power and the authority to rule upon issues arising under SCACR, including those arising under Rule 225.

---

**4.** *Kearney* involves Rule 41 of the former Supreme Court Rules. Rule 225, SCACR, replaced this rule. *See* Appendix A, Table of Comparative Rules, SCACR.

## III. Automatic Stay

The State argues that the filing of the Notice of Appeal acted to automatically stay the June 10, 1999 Order. We agree.

■ "As a general rule, the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree." Rule 225, SCACR. Certain exceptions to this general rule are found in statutes, court rules, and case law. *Id.* Section 18–9–130 provides that a notice of appeal does not act as a stay of a judgment directing the payment of money unless the presiding judge before whom the judgment was obtained grants a stay of execution. S.C.Code Ann. § 18–9–130 (1976). The term "judgment" used in the statute and rule connotes a final decision of the court that addresses the merits of the cause of action and disposes of the cause as to all. *Link v. School Dist. of Pickens,* 302 S.C. 1, 393 S.E.2d 176 (1990).

■ The payments in this case are not "money judgments" within the contemplation of section 18–9–130. *See Pelzer Mfg. Co. v. Cely,* 40 S.C. 430, 18 S.E. 790 (1894) (section 18–9–130 applies to judgments directing money be paid by one *party* to another *party*) (emphasis added). Expert fees are matters incidental to the case and do not constitute a traditional judgment as contemplated by the statute. Therefore, because the payment of expert fees is a collateral issue, no exception applies and the circuit court orders were automatically stayed by the filing of the notice of appeal.

## IV. The Circuit Court's Authority to Order the Attorney General's Office to Pay for the Expert's Expenses

■ The State argues that the circuit court erred in ordering the Attorney General's office to pay the expert's expenses. We disagree.

■ As a party to the lawsuit, the Attorney General, acting as an embodiment of the State, becomes subject to the authority of the court. Once the State subjects itself to the jurisdiction of the court, the court has the authority to direct the State to employ and compensate experts in order to

maintain the integrity of the judicial process. In *State v. Locklair,* 341 S.C. 352, 535 S.E.2d 420 (2000) we held that a trial judge can order an independent psychiatric examination of a defendant in a death penalty case when he or she believes that mental competency may be an issue at trial. This Court found that "[i]n order to protect the legal process and preserve the integrity of the trial, a trial judge should have the authority to order a psychiatric evaluation of the defendant when his or her competency may be in question." *Id.* at 364, 535 S.E.2d 420.

Similarly, the trial judge in this case has the inherent authority to require an expert examination of an indigent and direct which party should pay for the examination. If the State's theory is correct, and the State could not pay for anything unless it was specifically appropriated, a trial court would never have the authority to require the State to pay for its obligations. For example, under the State's theory, a trial court would not have the authority to direct the State to pay for its tort obligations unless such obligations were specifically appropriated.

Furthermore, the issue of the expert's fees arose at the first hearing. The Attorney General representing the State not only failed to object to the judge's oral ruling that the Attorney General's office would be contingently liable for the fee, but drafted the order. Prior to the filing of the Rule 60(b) motion, the only indication that the Attorney General's office found the payment provision to be unacceptable was a cover letter accompanying a proposed order that did not address the payment issue. The record demonstrates that the Attorney General's office essentially consented to the November order, and as such, cannot now appeal it. *See, e.g., Hooper v. Rockwell,* 334 S.C. 281, 513 S.E.2d 358 (1999). For this same reason, the Attorney General's office cannot now challenge the February Order authorizing the expenditure of $1,500.00. Further, we agree with the circuit court that the fact the Attorney General's office subsequently regretted its decision to agree to pay does not render the order "void" or "no longer equitable" under Rule 60(b).

## V. Continuing Appropriation

The State argues that S.C.Code Ann. § 44–48–90 (Supp.1999) constitutes a continuing appropriation that autho-

rizes the State to pay expert witness fees for indigents from the general fund. We disagree.

■■■■■■ An appropriation may be made by a permanent continuing statute. *Grimball v. Beattie,* 174 S.C. 422, 177 S.E. 668 (1934). A continuing appropriation is an appropriation running on from year to year without further legislative action until the purpose of levy and appropriation has been accomplished. *State ex rel. Edwards v. Osborne,* 195 S.C. 295, 11 S.E.2d 260 (1940); *see also Cox v. Bates,* 237 S.C. 198, 116 S.E.2d 828 (1960) (finding no provision in the South Carolina Constitution which prohibits continuing appropriations); *Dacus v. Johnston,* 180 S.C. 329, 185 S.E. 491 (1936) (defining continuing appropriations as payments to be continued beyond the term or session of the Legislature by which they are made).

The State argues that section 44-48-90 constitutes a continuing appropriation because it provides that the circuit court shall "approve payment" of expert fees for an indigent person's defense in an action pursuant to the Sexually Violent Predator Act. We find that this is a strained reading of the statute. Section 44-48-90 does not operate as an appropriation of money that is to carry over from year to year, it merely gives the circuit court the authority to review the expert fees and approve them if they are reasonable. The statute is silent as to the source of the funding. Section 44-48-90 is not a continuing appropriation statute because it does not contemplate that a specific amount of money will be spent annually until the statute is repealed by the Legislature. *See, e.g., Dacus, supra* (holding that an act which authorizes the Highway Commission to appoint a chief highway commissioner fixed the manner of the payment of his salary by a continuing appropriation each year); *Briggs v. Greenville County,* 137 S.C. 288, 135 S.E. 153 (1926) (discussing continuing appropriations in terms of payments from special funds set aside to pay for specific projects such as highway construction).

## VI. Appropriations Act

■■■ The State argues that Act No. 100, 1999 S.C. Acts 355 (the "Act") authorizes payment of expert witness fees by the

Commission on Indigent Defense for future cases but not the instant matter. We agree.

Section 35.5 of Part IB of the Act states:

[t]he funds appropriated under "Civil Court Appointments" shall be used for Civil Court Appointments including Termination of Parental Rights, Abuse and Neglect, Probate Court Commitments, *Sexually Violent Predator Act,* and Post Conviction Relief (PCR) to *reimburse court appointed private attorneys.*

(emphasis added). The appropriation is not limited to attorney's fees, but applies broadly to the reimbursement of attorneys. Accordingly, the appropriation may be used to reimburse private attorneys for experts they have hired to defend an action brought under the Sexually Violent Predator Act. However, this provision will apply to future cases because the provision was not in place at the time this action was initiated.

In the instant case, the Office of Indigent Defense indicated that they did not have the money to pay for the expert's fees because they are "currently facing a severe financial crisis." As stated above, the trial court has the authority to employ experts and direct the payment of expert expenses by the parties in the lawsuit. Because the Office of Indigent Defense did not have enough money to pay for the fees at the time of the lawsuit, the circuit court properly ordered the Attorney General's office to pay.

## VII. Other Available Sources

The State argues that there are no other sources of State funding available to pay expert witnesses in this type of case. We agree.

Section 10.13 of Part IB of the Act, the provision dealing with the Department of Mental Health, sets up a sexual predator program with funds that "may be used to reimburse the Department for expenses associated with the program in fiscal year 1998–1999." The expert expenses in this case are not typical expenses of the Department of Mental Health, so it would not be covered by this provision. The Department of Mental Health's responsibilities under the Sexually Violent Predator Act include: (1) serving on a Multidisciplinary Team

to assess whether or not the person satisfies the definition of a sexually violent predator, S.C.Code Ann. § 44–48–50 (Supp. 1999); (2) providing the facility for the control, care, and treatment of such persons until his or her mental abnormality or personality disorder has so changed that the person is safe to be at large, S.C.Code Ann. § 44–48–100 (Supp.1999); and (3) authorizing the release of such committed persons when the Director of the Department of Mental Health determines that the person is safe to be at large, S.C.Code Ann. § 44–48–120 (Supp.1999). The Department of Mental Health's responsibilities under the Sexually Violent Predator Act do not include the payment of expert fees.

Provisions for Judicial Commitment expenses under Section 30.4 of Part IB of the Act do not apply to expert fees because it does not expressly include the Sexually Violent Predator Act. The appropriations for the Judicial Department are very specific and include appropriations for Judicial Commitment, S.C.Code Ann. § 44–17–510 (1976); commitment of children, S.C.Code Ann. § 44–24–10 to –280 (Supp.1999); and treatment facilities for alcohol and drug abuse treatment.

### Conclusion

Based on the foregoing, we **AFFIRM** the trial court's orders providing for the payment of Cooper's expert fees by the Attorney General's office.

MOORE, WALLER, BURNETT, and PLEICONES, JJ., concur.